[Cite as *State v. Thompson*, 2017-Ohio-792.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HENRY COUNTY

STATE OF OHIO,                                    CASE NO. 7-16-10

    PLAINTIFF-APPELLEE,

    v.

RICHARD THOMPSON,                          O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Napoleon Municipal Court
Trial Court No. 16-CRB-0296

Judgment Affirmed

Date of Decision:    March 6, 2017

APPEARANCES:

    *Scott T. Coon* for Appellant

    *Paul A. Skaff* for Appellee

**WILLAMOWSKI, J.**

{¶1} Defendant-appellant Richard Thompson ("Thompson") appeals his conviction for failure to confine a dog in violation of R.C. 955.22(C)(1) from the Napoleon Municipal Court. On appeal, Thompson argues that the trial court erred by (1) giving improper jury instructions, (2) wrongly excluding relevant evidence, and (3) failing to order a mistrial after the State allegedly engaged in prosecutorial misconduct during the closing arguments. For the reasons set forth below, the judgment of the lower court is affirmed.

{¶2} Thompson is the registered owner of a pit bull named Mack. Tr. 170. In 2015, Mack bit people on at least three known occasions. Tr. 172. Thompson was charged with failure to confine a dog after two of these incidents and pled guilty both times. Tr. 134-135. Ex. 2, 3. On March 22, 2016, one of Thompson's neighbors, Steven Royal ("Royal"), filed a complaint with the Henry County Dog Warden that alleged Mack was running loose on his property in Liberty Center. Tr. 36. Doc. 1. In his statement to the dog warden, Royal said that he was pulling into his driveway in his car when a dog began circling his vehicle and snapping at the tires. Doc. 1. Tr. 73. At trial, Royal testified that he got out of his car, grabbed a hammer, and chased the dog out of his yard. Tr. 73. He testified that this dog was Thompson's pit bull and claimed that Mack had bitten him roughly a year before this incident, which is how he could identify the dog. Tr. 73, 84.

{¶3} At trial, Royal's wife, Anna Mae Royal, testified that she was in the car

-2-

with her husband at the time of this incident and witnessed Royal chase the dog off of their property with a hammer. Tr. 88-89. When asked to describe the dog that was circling her vehicle, she said it was a "black dog, a Pitbull, and it [had] a white eye and the rest of it [was] black." Tr. 88. She later said the white patch was around the dog's left eye. Tr. 92. She claimed that she could identify the dog as Thompson's pit bull because the dog had been on their property before and had bitten her husband previously. Tr. 89.

{¶4} One of Royal's neighbors, Mark Jensen ("Jensen"), testified that he witnessed Thompson's pit bull run after Royal's vehicle on March 22, 2016. Tr. 47. While Jensen could not see Mack leave Thompson's property from his vantage point, he testified that he could see that Mack was not tethered or confined. Tr. 62, 65. Jensen identified the dog as Thompson's pit bull, Mack. Tr. 47. While he admitted that several other neighbors in the vicinity owned similar looking dogs, Jensen claimed he could recognize Mack because this dog had attacked and bitten his son previously. Tr. 48, 58.

{¶5} At the beginning of the defense's case in chief, the defense counsel requested a photograph of Mack be introduced into evidence to corroborate Thompson's description of his pit bull. Tr. 99. Since the photograph was on Thompson's phone, the defense asked permission to email the photograph to the court so that the picture could be printed and used as an exhibit. *Id.* The prosecution objected because the witnesses for the State did not have the opportunity to identify

the dog in the picture as the dog they had witnessed on the date of the incident. *Id.* Since the picture was not available for the State's case in chief, the judge did not allow the picture to be admitted. Tr. 100.

{¶6} The defense called Thompson's daughter, Mary Thompson, to testify. She said that all three of Thompson's dogs, including Mack, were upstairs with Thompson when she left the house before the incident occurred. Tr. 102-104. She also described Mack, saying that he was roughly "50/50" white and black with a black patch around his right eye. Tr. 105-106. On cross examination, the prosecutor asked Mary Thompson why she looked towards her father before responding and suggested that Mary Thompson was seeking her father's approval before answering questions. Tr. 112. Mary Thompson denied both seeking cues from her father while testifying and coordinating her testimony with him before the trial. Tr. 112-113. Thompson's wife, Dawn Thompson, also testified and described Mack, saying, "Mack is black and white with a black eye patch on his right eye." Tr. 115-116. While she admitted that she was at work at the time of the incident, she stated that she made sure that all of their dogs were inside the house when she left for work. Tr. 118.

{¶7} Thompson then took the stand and contradicted Anna Mae Royal's description of Mack, stating,

> **Mack has got a patch over his right eye that is black; the rest of his face is white. He has a little bit of black on his ears; he's got mostly black on his ears. He has mainly black spots on his back**

> **and then he's got white spots in between all the black spots so he's kind of like a 50/50 mix.**

Tr. 130-131. Thompson then testified that he was asleep at the time of the incident but claimed that all of his dogs were with him when he went to sleep and that all of his dogs were present with him when he was awakened by the dog warden's call, which informed him about Royal's complaint. Tr. 138-139, 144. Thompson also testified that Royal could not have been bitten by Mack a year prior to the March 22 incident as Thompson only had Mack since September of 2015. Tr. 170.

{¶8} During his closing argument, the prosecutor discussed the testimony of Mary Thompson, saying,

> **We also heard testimony from their [the defense's] witnesses that this family has never discussed this since March 22. I don't know if you caught it but young Ms. Thompson, every time a question was asked, she looked immediately to her dad. Testimony was rehearsed there is no doubt in my mind.**

Tr. 177. Defense counsel objected to this statement, argued that the prosecutor was not permitted to give his opinion of the witnesses, and moved for a mistrial. Tr. 177-178. The court denied the request for a mistrial, saying, "If there was any improper comment…then I don't feel overall that it cannot be overcome by the instructions that I will give in closing arguments." Tr. 179.

{¶9} After closing arguments, defense counsel objected to the portion of the jury instructions defining a strict liability offense. The instructions the court issued stated,

> **Strict liability offenses are enforced irrespective of any guilty intent. The defendant's purpose is irrelevant. You may find the defendant guilty without regard to the owners, keepers, harborers, or handlers' negligence, recklessness or other fault."**

Tr. 199. Defense counsel proposed the following as an alternative: "the State need only prove that the accused engaged in a voluntary act or an omission to perform an act or duty which he is capable of performing." Tr. 195. Mixed into this objection was the argument that defense counsel's alternative jury instruction would protect Thompson if the jurors found that "someone else [besides Thompson] did something" that resulted in a violation of R.C. 955(C).[1] Tr. 190. The prosecution, however, objected to this proposed instruction, arguing that this alternative added an additional element for the State to prove. Tr. 193-194. The court denied defense counsel's motion on the grounds that these alternative instructions "seem to suggest a further element beyond what is required in the statute...." Tr. 195.

{¶10} After the jury returned a verdict of guilty, the court sentenced Thompson on June 28, 2016. On appeal, Thompson raises the following assignments of error.

### First Assignment of Error

**The court erred in improperly instructing to the jury as to the elements of the offense charged.**

---

[1] On appeal, Thompson alleges the jury instructions contain two erroneous provisions. At trial, he raised one objection that specifically identified the provision in the jury instructions discussing the strict liability nature of this offense. However, in articulating his objection, he touched on the second issue that he raises on appeal. In his brief, he merely separates these related concerns into two fully developed, distinct arguments.

**Second Assignment of Error**

**The court erred in excluding relevant evidence and abused its discretion in using the most severe sanction in excluding relevant evidence offered by the appellant.**

**Third Assignment of Error**

**The court erred in failing to declare a mistrial upon the State engaging in prosecutorial misconduct.**

We will consider these assignments of error in this order.

*Jury Instructions*

**{¶11}** In his first assignment of error, Thompson alleges that the trial court issued improper jury instructions. "In reviewing the sufficiency of jury instructions given by a trial court, the proper standard of review…is whether the trial court's refusal to give a requested jury instruction constituted an abuse of discretion under the facts and circumstances of the case." *Schnipke v. Safe-Turf Installation Group, L.L.C.,* 190 Ohio App.3d 89, 2010-Ohio-4173, 940 N.E.2d 993, ¶ 30. "An abuse of discretion is more than an error of judgment; rather, it implies that the trial court's decision was unreasonable, arbitrary, or capricious." *Heilman v. Heilman*, 3d Dist. Hardin No. 6–12–08, 2012-Ohio-5133, ¶ 14. "When applying the abuse of discretion standard, a reviewing court is not free to merely substitute its judgment for that of the trial court." *In re Jane Doe 1*, 57 Ohio St.3d 135, 138, 566 N.E.2d 1181 (1991).

**{¶12}** In this case, Thompson argues that the jury instructions were deficient

in two different respects. The first portion of the jury instructions that Thompson

alleges to be improper reads as follows:

> **This is a strict liability offense. Strict liability offenses are enforced irrespective of any guilty intent. The defendant's purpose is irrelevant. You may find the defendant guilty without regard to the owners, keepers, harborers, or handlers' negligence, recklessness or other fault.**

Tr. 198-199. Consequently, during the trial, Thompson requested the trial court to

include this language in the jury instructions in lieu of the strict liability provision:

> **For a violation of R.C. 955.22(C), failure to confine a dog, the State need only prove that the accused engaged in a voluntary act or an omission to perform an act or duty which he is capable of performing.**

Tr. 195. The State objected to this alternative provision, arguing that this wording

essentially adds an element to the crime that is not included in the statute. Further,

the State argued that case law has consistently interpreted a violation of R.C.

955.22(C) to be a strict liability offense. *Id.* The court then declined to insert this

wording in place of the strict liability language as this provision would "seem to

suggest a further element beyond what is required in the statute." Tr. 194-195.

{¶13} On appeal, Thompson argues that this jury instruction was in conflict

with R.C. 2901.21(A), which defines the prerequisites for finding criminal liability

under Ohio law. R.C. 2901.21(A) reads:

> **(A) Except as provided in division (B) of this section, a person is not guilty of an offense unless both of the following apply:**

> **(1) The person's liability is based on conduct that includes either**

> **a voluntary act, or an omission to perform an act or duty that the person is capable of performing;**
>
> **(2) The person has the requisite degree of culpability for each element as to which a culpable mental state is specified by the language defining the offense.**

R.C. 2901.21(A). Thompson argues that the strict liability provision of the jury instructions allowed him to be convicted of a criminal offense without the jury first having to find that he possessed a culpable mental state. Further, this instruction also allowed the jury to find him guilty without deciding that he had acted or failed to act to perform a duty he was capable of performing. R.C. 2901.21(A).

{¶14} We do not find Thompson's argument persuasive. First, R.C. 2901.21 contains an exception to the two prerequisites for criminal liability that Thompson points to in his argument. R.C. 2901.21(A) expressly alludes to this exception for strict liability offenses in R.C. 2901.21(B), which reads in relevant part:

> **(B) When the language defining an offense does not specify any degree of culpability, and plainly indicates a purpose to impose strict criminal liability for the conduct described in the section, then culpability is not required for a person to be guilty of the offense.**

R.C. 2901.21(B). Courts in Ohio have consistently interpreted the failure to confine a dog in violation R.C. 955.22(C) as a strict liability offense that falls under 2901.21(B). *State v. Judge*, 1st Dist. Hamilton No. C-880317, 1989 WL 36676, 1 (April 19, 1989); *State v. Squires*, 108 Ohio App.3d 716, 718, 671 N.E.2d 627, 629 (2d Dist.1996); *Middleburg Hts. v. Troyan*, 8th Dist. Cuyahoga Nos. 103710,

103711, 103712, and 103713, 2016-Ohio-5625, ¶ 18; *State v. Miller*, 9th Dist. Wayne No. 2820, 1994 WL 64338 (Feb. 23, 1994); *State v. Campbell*, 10th Dist. Franklin No. 08AP–816, 2009-Ohio-3615, ¶ 26. *See State v. Shelton*, 3d Dist. Van Wert Nos. 15-2000-14 and 15-2000-15, 2000 WL 1824886 (Dec. 13, 2000).  In examining the jury instructions before us, we rely upon the extensive case law interpreting this provision and hold that a violation of R.C. 955.22(C) is a strict liability offense.  Since the trial court relied on this same, well-established interpretation of R.C. 955.22(C) in defining this crime for the jurors, we cannot find that the trial court abused its discretion in denying Thompson's requested instruction. Tr.  192.

{¶15} The second portion of the jury instructions to which Thompson objects reads in relevant part as follows:

> **Before you can find the defendant guilty you must find beyond a reasonable doubt that…Richard Thompson…[1] failed to keep the dog physically confined or restrained upon his premises by a leash, tether, adequate fence, supervision or secure enclosure to prevent escape [2] or keep the dog under reasonable control.**

Tr. 198-199.  Thompson argues that the wording of this section does not accurately represent the wording of R.C. 955.22(C), which states:

> **(C) Except when a dog is lawfully engaged in hunting and accompanied by the owner, keeper, harborer, or handler of the dog, no owner, keeper, or harborer of any dog shall fail at any time to do either of the following:**
>
> **(1) Keep the dog physically confined or restrained upon the premises of the owner, keeper, or harborer by a leash, tether,**

> **adequate fence, supervision, or secure enclosure to prevent escape;**
>
> **(2) Keep the dog under the reasonable control** *of some person*.

(Emphasis added.) R.C. 955.22(C).

{¶16} Thompson notes that the words "of some person" appear in R.C. 955.22(C)(2) but are omitted in the jury instruction, suggesting to the jury that the dog had to be confined or "under the reasonable control" of Thompson on March 22. Thompson argues that the language of these instructions failed to inform the jurors that Thompson could have been in compliance with the statute if they found he "kept the dog under the reasonable control of some person," such as his daughter or his wife. R.C. 955.22(C). We do not find this argument to be persuasive because a trial judge could reasonably find that this additional language was not relevant to the particular circumstances of this case.

{¶17} At the time of the alleged incident on March 22, Thompson was—by the admission of Thompson, his daughter, and his wife—the only person at home with Mack. Tr. 110, 120, 139. If Mack was not confined in accordance with R.C. 955.22(C)(1), the only person available to keep Mack under reasonable control in accordance with R.C. 955.22(C)(2) was Thompson. Further, no one at trial contested that a dog was loose on Royal's property. The question for the jury was whether the dog that was loose on Royal's property was Mack. Since the issue was the identity of the dog, the additional statutory language was irrelevant as the loose

dog was not under the reasonable control of any person. Since the jury identified the loose dog as Mack, they logically concluded that Thompson failed to comply with both provisions of R.C. 955.22(C)(1), (2). For these reasons, we find that the trial court did not abuse its discretion in issuing these jury instructions. Thus, we overrule Thompson's first assignment of error.

*Exclusion of Evidence*

{¶18} In his second assignment of error, Thompson asserts that the trial court abused its discretion by excluding an image of Mack that defense counsel sought to present to the jury. "The admission or exclusion of relevant evidence rests within the sound discretion of the trial court." *State v. Sage*, 31 Ohio St.3d 173, 510 N.E.2d 343 (1987). "We will not reverse a trial court's ruling on evidentiary issues absent an abuse of discretion and proof of material prejudice." *State v. McKelton*, 2016-Ohio-5735, --- N.E.3d ---, ¶ 181. "An abuse of discretion is more than an error of judgment; rather, it implies that the trial court's decision was unreasonable, arbitrary, or capricious." *Heilman, supra,* at ¶ 14. "When applying the abuse of discretion standard, a reviewing court is not free to merely substitute its judgment for that of the trial court." *In re Jane Doe 1, supra*, at 138.

{¶19} In this case, after the State's case in chief had concluded, defense counsel moved to present an image of Mack to the jury that was, at the time of the motion, on Thompson's phone. Tr. 98. The prosecution objected, arguing that it was "completely prejudicial to the State to surprise the other side with a telephone

photograph" as the State's witnesses had already left and could not examine the image. Tr. 99. The court denied the motion, saying

> **I'm not going to allow it because we did not have the photograph prior to the case starting, he [Thompson] obviously had this phone this morning before we got started and it should have been published at that time and been part of the State's case in chief, and so forth for those reasons I will not allow it.**

Tr. 99-100. The record shows that defense counsel wanted to introduce this image after all of the State's witnesses who had identified and described Mack had been excused. These witnesses were, therefore, not available to give testimony as rebuttal evidence or to identify the dog in the image. The record shows that the trial judge's ruling was arguably reasonable as he pointed to competent, credible evidence that the prosecution would be unfairly prejudiced by the admission of this image. In this ruling, the trial court reasonably exercised its discretion to preserve the fairness of this proceeding. Thus, this decision was not an abuse of discretion, and we are not, therefore, justified in disturbing the trial court's ruling. Accordingly, the appellant's second assignment of error is overruled.

*Prosecutorial Misconduct*

{¶20} In his third assignment of error, Thompson argues that the State engaged in prosecutorial misconduct during closing arguments, alleging the prosecutor impermissibly stated a personal belief about the credibility of a witness. In reviewing claims of prosecutorial misconduct,

> **an appellate court should consider [four factors:] (1) the nature**

> **of the remarks, (2) whether an objection was made by counsel, (3) whether corrective instructions were given by the court, and (4) the strength of the evidence against the defendant.**

*State v. Johnson*, 3d Dist. Allen No. 1-13-45, 2014-Ohio-4750, ¶ 87, quoting *State v. Braxton*, 102 Ohio App.3d 28, 41, 656 N.E.2d 970 (8th Dist. 1995). "The test for prosecutorial misconduct is [1] whether remarks are improper and, if so, [2] whether they prejudicially affected substantial rights of the accused." *State v. Lott*, 51 Ohio St.3d 160, 165, 555 N.E.2d 293 (1990), citing *State v. Smith*, 14 Ohio St.3d 13, 14-15, 470 N.E.2d 883 (1984).

{¶21} "[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 220, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982). "A prosecutor is entitled…to 'wide latitude in summation as to what the evidence has shown and what reasonable inferences may be drawn therefrom.'" *McKelton*, *supra*, at ¶ 274. *State v. Stephens*, 24 Ohio St.2d 76, 82, 263 N.E.2d 773 (1970). However, "[i]t is improper for an attorney to express his personal belief or opinion as to the credibility of a witness or as to the guilt of the accused." *Smith* at 13, citing *State v. Thayer*, 124 Ohio St. 1, 176 N.E. 656 (1931). "A prosecutor may state his opinion if it is based on the evidence presented at trial." *State v. Klein*, 3d Dist. Union No. 14-12-09, 2013-Ohio-2387, ¶ 60, quoting *State v. Watson*, 61 Ohio St.3d 1, 10, 572 N.E.2d 97 (1997) abrogated on other grounds by *State v. McGuire*, 80 Ohio St.3d 390, 686 N.E.2d 1112 (1997).

{¶22} "[N]ot every intemperate remark by counsel can be a basis for reversal." *State v. Liles*, 3d Dist. Allen No. 1-14-61, 2015-Ohio-3093, ¶ 31, quoting *State v. Porter*, 4th Dist. Meigs No. 10CA15, 2012–Ohio–1526, ¶ 20. "Misconduct of a prosecutor at trial will not be considered grounds for reversal unless the conduct deprives the defendant of a fair trial." *Johnson, supra*, at ¶ 88. Rather, the comments in question must prejudice a substantial right of the defendant and "so [infect] the trial with unfairness as to make the resulting conviction a denial of due process." *McKelton* at ¶ 257, quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974).

{¶23} "To establish prejudice, a defendant must show that a reasonable probability exists that, but for the prosecutor's improper remarks, the result of the proceeding would have been different." *Liles* at ¶ 31, quoting *Porter* at ¶ 20. "An improper comment does not affect a substantial right of the accused if it is clear beyond a reasonable doubt that the jury would have found the defendant guilty even without the improper comments." *State v. Treesh*, 90 Ohio St.3d 460, 464, 739 N.E.2d 749 (2001). The comments under scrutiny must be examined "in the context of the entire trial." *State v. Potts*, 3d Dist. Hancock No. 5-16-3, 2016-Ohio-5555, ¶ 83, quoting *State v. Siefer*, 3d Dist. Hancock No. 5-09-24, 2011-Ohio-1868, ¶ 46.

{¶24} Here, Thompson alleges that the prosecutor engaged in prosecutorial misconduct by giving his personal opinion of a witness. The relevant portion of the prosecution's closing argument states,

> **We also heard testimony from [the defense's] witnesses that this family has never discussed this since March 22. I don't know if you caught it but young Ms. Thompson, every time a question was asked, she looked immediately to her dad. Testimony was rehearsed there is no doubt in my mind.**

Tr. 177. We begin our analysis by examining this statement under the four factors to be considered by reviewing appellate courts in prosecutorial misconduct cases. See *Johnson, supra*, at ¶ 87.

{¶25} First, in examining the nature of these remarks, we note that the challenged comment was stated in closing arguments, which jurors are instructed not to consider as evidence. Factual assertions and reasonable inferences are permitted in closing arguments, but the prosecutor, here, explicitly stated that the inference he was presenting to the jury was a personal belief, saying there "[was] no doubt in his mind." Tr. 177. However, in viewing this remark in the context of the entire trial, we note that this was one sentence in the closing argument. Second, defense counsel objected to this statement at trial and requested a mistrial, but the trial court overruled this request. Tr. 179. Third, the trial judge denied defense counsel's motion for a mistrial on the grounds that the court was going to issue jury instructions that would explain that closing arguments are not evidence and would "overcome" the impact of any improper comment that may have been uttered by the prosecution. Tr. 179. After closing arguments were concluded, the court issued the following instructions to the jury.

> **The evidence does not include the complaint, opening statements**

**or closing arguments of counsel. The opening statements and closing arguments of counsel are designed to assist you, they are not evidence.**

Tr. 197. Fourth, the evidence against the defendant included testimony from Mr. Royal, Mrs. Royal, and Mr. Jensen. Each of these witnesses testified that they saw a dog unconfined on March 22 and were able to explain how they were able to identify that unconfined dog as Mack. A reasonable jury could find that Thompson was guilty on the basis of this evidence.

{¶26} Even if the prosecutor's remark was improper, we do not see how this comment, in the context of the entire proceeding, had a prejudicial impact on Thompson's substantial rights or could, by itself, deprive Thompson of a fair trial. Finally, Thompson has not demonstrated how the result of the trial would have been different had the prosecutor not uttered this one sentence. The trial court instructed the jury to base its determination on the evidence and told the jurors that the closing arguments were not evidence. We are to presume that the jurors followed these instructions and that the verdict was not, therefore, based on the content of the closing arguments. *Pang v. Minch*, 53 Ohio St.3d 186, 187, 559 N.E.2d 1313 (1990). Since the defense has given us no reason to dispense with this presumption, we conclude that this verdict would have been the same with or without this comment in the State's closing arguments. Thus, Thompson's third assignment of error is overruled.

{¶27} Having found no error prejudicial to the appellant in the particulars

Case No. 7-16-10

assigned and argued, the judgment of Napoleon Municipal Court is affirmed.

**_Judgment Affirmed_**

**PRESTON, P.J. and SHAW, J., concur.**

**/hls**