[Cite as *State v. Weaver*, 2018-Ohio-2329.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| *Plaintiff-Appellee* | : | Appellate Case No. 27579 |
| | : | |
| v. | : | Trial Court Case No. 2016-CR-2127/1 |
| | : | |
| TORACE D. WEAVER | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| *Defendant-Appellant* | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 15th day of June, 2018.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by MICHAEL J. SCARPELLI, Atty. Reg. No. 0093662, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, Dayton, Ohio 45422
    Attorney for Plaintiff-Appellee

GLENDA A. SMITH, Atty. Reg. No. 0070738, P.O. Box 15353, Wyoming, Ohio 45215
    Attorney for Defendant-Appellant

. . . . . . . . . . . . .

TUCKER, J.

{¶ 1} Defendant-appellant, Torace D. Weaver, appeals from his convictions on one count of murder, one count of endangering children and one count of obstructing official business. Raising six assignments of error, Weaver argues that the trial court erred by admitting certain evidence over his objections; that the evidence was cumulatively insufficient to support his convictions; that the jury's verdicts were against the manifest weight of the evidence; that certain remarks made by the prosecutor during opening and closing statements constituted misconduct; that the trial court improperly restricted his own closing statement; that he and his co-defendant should have been tried separately; and that he received ineffective assistance of counsel. We find that the trial court did not err, whether by admitting the challenged evidence or by trying Weaver and his co-defendant jointly; that the jury did not clearly lose its way; that the prosecutor's remarks did not unfairly prejudice Weaver; that the trial court did not improperly restrict Weaver's closing statement; and that Weaver's counsel provided adequate representation. Therefore, we affirm the judgment of the trial court.

## I. Facts and Procedural History

{¶ 2} The Children Services Division of the Montgomery County Department of Job and Family Services placed S.T. and his brother T.W. with Weaver and his wife for foster care on September 24, 2015.[1] Tr. of Proceedings 404:21-406:13. S.T. was approximately two years old at the time, and his brother was approximately three. *Id.* at 395:21-396:8.

---

[1] Recognizing the heightened privacy interests of minors, we identify S.T. and T.W. only by their initials in accord with Sup.R. 1(A), 44(C), 44(H) and 45(D).

{¶ 3} At or around 6:48 p.m. on November 18, 2015, personnel with the Dayton Fire Department and the Dayton Police Department were dispatched to the King of Glory Church at 5001 Genesee Avenue in response to a 911 call. *Id.* at 340:11-341:24, 343:10-344:14, 453:21-454:4, 484:1-485:13 and 506:11-507:13. The first emergency personnel to arrive found S.T. lying on the floor of the chancel with Weaver administering cardiopulmonary resuscitation. *Id.* at 484:1-487:4.

{¶ 4} While Weaver was being interviewed, paramedics and emergency medical technicians attempted to revive S.T. *Id.* at 454:25-455:15, 457:4-459:16, 487:5-489:24. Their efforts, however, proved unsuccessful, so they transported S.T. by ambulance to Good Samaritan Hospital. *Id.* at 463:20-465:25. Less than an hour afterward, S.T. was pronounced dead. *See id.* at 454:16-454:18, 464:23-464:25, 467:9-467:13, 468:1-468:9, 484:19-484:24 and 489:1-489:8.

{¶ 5} On August 26, 2016, a Montgomery County grand jury indicted Weaver on the following charges: Count 1, murder pursuant to R.C. 2903.02(B) and 2903.11(A)(1); Count 2, murder pursuant to R.C. 2903.02(B) and 2919.22(B)(1); Count 3, involuntary manslaughter pursuant to R.C. 2903.04(A) and 2919.22(A); Count 4, felonious assault pursuant to R.C. 2903.11(A)(1); Count 5, endangering a child pursuant to R.C. 2919.22(B)(1); Count 6, endangering a child pursuant to R.C. 2919.22(A); Count 7, reckless homicide pursuant to R.C. 2903.041; and Count 8, obstructing official business pursuant to R.C. 2921.31(A). Weaver and his wife, Shureka, were tried jointly as co-defendants, and the jury found Weaver guilty as charged after a four-day trial.[2]

---

[2] The jury found Shureka Weaver guilty of the single offense with which she was charged, endangering a child pursuant to R.C. 2912.22(A).

**{¶ 6}** At Weaver's sentencing hearing on May 5, 2017, the court merged Count 1 with Counts 2, 3, 4, 5 and 7, and the State elected to proceed on Count 1. The court sentenced Weaver to prison for a term of 15 years to life on Count 1; to 36 months in prison on Count 6, consecutive to the sentence for Count 1; and to 90 days in jail on Count 8. On May 9, 2017, the court filed its termination entry, and Weaver timely filed his notice of appeal on May 10, 2017.

## II. Analysis

**{¶ 7}** For his first assignment of error, Weaver contends that:

THE TRIAL COURT COMMITTED ERROR BY ADMITTING EVIDENCE AT TRIAL.

**{¶ 8}** Specifically, Weaver challenges the trial court's admission of certain parts of the testimony of one of the State's witnesses, Shaton Smith, along with the admission of a video recording, captured by an automatic camera in a police cruiser, that the State purportedly failed to authenticate.[3] Appellant's Br. 14 and 17. Weaver argues that Smith's testimony should have been excluded because its probative value was outweighed by the danger of unfair prejudice. *Id.* at 15-16. With respect to the authentication of the video, Weaver argues that the State relied on a witness who lacked knowledge sufficient to fulfill the requirements of Evid.R. 901. *See id.* at 17-18.

**{¶ 9}** The "admission of evidence is generally within the sound discretion of the trial court, and a reviewing court may reverse only upon the showing of an abuse of that discretion." *Peters v. Ohio State Lottery Comm.*, 63 Ohio St.3d 296, 299, 587 N.E.2d

---

[3] Weaver identifies Smith incorrectly as "Shanton Smith." *Compare* Appellant's Br. 14, *with* Tr. of Proceedings 374:8-374:11.

290 (1992); *State v. Williamson*, 2d Dist. Montgomery No. 19832, 2003-Ohio-6541, ¶ 26. In this context, the term "abuse of discretion" refers to "an arbitrary, unreasonable, [or] unconscionable attitude on the part of the trial court." *Williamson* at ¶ 26; *see also State v. Hancock*, 108 Ohio St.3d 57, 2006-Ohio-160, 840 N.E.2d 1032, ¶ 130.

{¶ 10} During Weaver's trial, Smith testified that S.T.'s previous foster parent, an acquaintance of hers, called her at work to inform her that S.T. had died. Tr. of Proceedings 375:4-375:13, 386:20-387:3 and 394:1-394:6. According to Weaver, the jury would likely have felt an especially high degree of sympathy for S.T. "[b]ecause [he] [was] a child victim," and by implication, a high degree of antipathy for Weaver himself, meaning that the probative value of this testimony was outweighed by the danger of unfair prejudice. *See* Appellant's Br. 16. Weaver maintains that the trial court abused its discretion by overruling his objection to the testimony, describing the way in which Smith learned of S.T.'s death as irrelevant, and the mention of S.T.'s death as cumulative by that point in the trial.[4] *See id.* at 15-16. Weaver further criticizes the ruling because Smith's testimony included "hearsay and double hearsay." *Id.* at 16.

{¶ 11} The trial court overruled an objection based on hearsay the moment Weaver's counsel asked for permission to approach the bench, finding that the statements attributed by Smith to S.T.'s previous foster parent were "not [offered] for the truth of the matter" asserted. Tr. of Proceedings at 387:4-387:7. After counsel clarified that Weaver objected to the testimony on the basis of relevance, rather than hearsay, the

---

[4] Weaver's brief actually states that "[h]ow Ms. Smith learned of [S.T.]'s death was not [sic] and testifying that [S.T.] is dead is [sic] cumulative." Appellant's Br. 16. Given that Weaver objected to the relevance of Smith's testimony, we presume that Weaver intended the missing word in the quoted passage to be "relevant." *See id.* at 15-16; Tr. of Proceedings 386:20-387:12.

State explained that it merely wanted to establish, through Smith's testimony, that S.T.'s previous foster parent had suffered a stroke and was unable to testify as a result. *Id.* at 387:9-387:24. The court overruled Weaver's objection in reliance on the State's explanation. *See id.* at 387:13-388:18.

{¶ 12} Relative to explaining the absence of S.T.'s previous foster parent at Weaver's trial, the bulk of Smith's testimony would seem to have been superfluous. Tr. of Proceedings 375:21-386:19. Even so, Smith knew S.T. personally, and her testimony was relevant inasmuch as it provided the jury with insight into S.T.'s health before he was placed for foster care with Weaver. *Id.* at 377:3-378:18 and 384:3-386:12. As well, though the jury had already heard the parties make many references to S.T.'s death before Smith testified, the repetition was all but unavoidable—of the eight charges on which Weaver was being tried, four pertained exclusively to S.T.'s death.

{¶ 13} The content of Smith's testimony, moreover, seems unlikely to have unfairly prejudiced Weaver's case. Smith did not testify regarding S.T.'s injuries or cause of death, Weaver's treatment of him, or Weaver himself. *See id.* at 374:8-386:7. Instead, Smith described how she came to know S.T.'s previous foster parent, her acquaintance with S.T. and his brother, and aspects of S.T.'s health and personality. *See id.* Notwithstanding that Smith's description of S.T. might have aroused sympathy for him in the minds of the jurors, Smith denied that she knew Weaver, or Weaver's wife, and indicated that she had had no contact with S.T. after the Children Services Division placed him in the Weavers' care. *Id.* at 385:21-386:19. The jury, in other words, learned nothing about Weaver through Smith's testimony, which all but eliminates the possibility that her testimony unfairly prejudiced him. Additionally, we concur with the trial court's

determination that the third-party statements incorporated into Smith's testimony did not satisfy the definition of hearsay set forth in Evid.R. 801(C). We find, therefore, that the trial court did not abuse its discretion by overruling Weaver's objection to Smith's testimony.

{¶ 14} Weaver also challenges the trial court's decision to overrule his objection to the introduction of State's Exhibit 63, a compact disc containing the cruiser camera video recording. Appellant's Br. 17; Tr. of Proceedings 521:19-522:13. On the evening of November 18, 2015, an officer with the Dayton Police Department interviewed Weaver and obtained an initial statement from him regarding S.T.'s injuries. Tr. of Proceedings 505:5-505:9 and 512:11-513:10. Afterward, the officer asked Weaver to wait in the back of his police cruiser to speak to a detective. *Id.* at 513:24-514:11. Weaver complied, and having been permitted to keep his cellular telephone, he made several calls while seated in the cruiser. *See id.* at 522:3-523:10. The cruiser's automatic camera system recorded Weaver making the calls, including audio of his remarks. *Id.* at 515:6-516:9 and 522:3-523:10; *see also* Appellee's Br. 4.

{¶ 15} At trial, the State questioned the officer about the cruiser camera, establishing that it was working properly at the relevant time; that it activated automatically when the officer opened his cruiser's rear door; and that the disc marked as State's Exhibit 63, which the officer had initialed, was the same disc that contained the recording of Weaver captured by the cruiser camera. Tr. of Proceedings 515:9-517:6 and 522:10-523:10. The officer, however, stated that he had not actually watched the recording itself. *Id.* at 516:10-516:13. Weaver objected to the admission of the exhibit on that basis. *Id.* at 519:10-519:18.

{¶ 16} In response to Weaver's objection, counsel for the State represented to the court that the officer had seen the recording, adding "that's why we had him initial [the disc]," though counsel could not explain why the officer indicated otherwise on the stand. *Id.* The court accepted the State's explanation and overruled the objection. After excerpts were played, the officer verified that the recording was accurate. *Id.* at 522:3-523:10.

{¶ 17} Here, Weaver accuses the officer of perjuring himself. Appellant's Br. 18. By Weaver's reasoning, the officer "could not attest to the video's accuracy, whether the equipment was operating properly or anything else prior to * * * viewing * * * the video," and he notes that "there was dead space on the video[,]" which the State did not play in its entirety. *Id.* Weaver argues that the trial court "abuse[d] [its] discretion and prejudiced [his] rights under the Sixth and Fourteenth Amendments" by allowing the State "to play the cruiser cam video in front of the jury prior to [its] authenticat[ion]." *Id.* at 18-19.

{¶ 18} According to Evid.R. 901(A), the "requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." The testimony of a witness with knowledge, among other things, satisfies this requirement. *See* Evid.R. 901(B)(1).

{¶ 19} Weaver has not shown that the officer committed perjury. The officer demonstrated that he was familiar with the functioning and operation of the cruiser camera system, and he need not have watched the recording to recall that the equipment installed in his cruiser was in working order. Although the officer indicated that he had

"not reviewed" the recording, he testified that he knew his cruiser camera had produced a recording, and that he had "seen the dis[c]" and initialed it. Tr. of Proceedings 516:7-516:19. This confirmed the authenticity of the disc and supported the State's representation to the court that the officer had, in fact, seen the recording contained on the disc before taking the stand. Tr. of Proceedings 519:10-520:17.

{¶ 20} Furthermore, the officer verified the accuracy of the recording in reliance on those moments he had witnessed in person, and Weaver has not alleged that any part of the recording shown to the jury was altered or inaccurate.[5] *See* Tr. of Proceedings 522:3-523:10; Appellant's Br. 18. Weaver implies that the "dead space on the video" should cast doubt on the reliability of the recording, but the "dead space" appears to consist merely of intervals during which Weaver was not speaking. *See* Tr. of Proceedings 519:10-520:8 and 522:10-522:13; Appellant's Br. 18.

{¶ 21} Before the trial court allowed the State to play the recording for the jury, it received testimony and representations "sufficient to support a finding that [Exhibit 63] [was] what [the] State claim[ed]," and consequently, we find that the trial court did not abuse its discretion by admitting State's Exhibit 63 into evidence. Evid.R. 901(A); *see also State v. Pickens*, 141 Ohio St.3d 462, 2014-Ohio-5445, 25 N.E.3d 1023, ¶ 149-151 (applying the "silent witness" theory of authentication of photographs); *Midland Steel Prods. Co. v UAW Local 486*, 61 Ohio St.3d 121, 129-130, 57 N.E.2d 98 (1991) (same); *State v. Maiolo*, 2d Dist. Clark No. 2015-CA-15, 2015-Ohio-4788, ¶ 10-12 (same). Weaver's first assignment of error is overruled.

---

[5] The State represented to the court, as well, that "there[ ] [had] been no alterations [or] deletions." Tr. of Proceedings 519:22-520:7.

{¶ 22} Weaver's second and third assignments of error implicate related standards of review, so we address them together. For his second assignment or error, Weaver contends that:

THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S RULE 29 MOTION.

{¶ 23} And for his third assignment of error, Weaver contends that:

THE VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 24} With respect to his convictions on Counts 1 and 6, murder under R.C. 2903.02(B) and endangering a child under R.C. 2919.22(A), Weaver argues that the trial court erred by overruling his motion for acquittal. *See* Tr. of Proceedings 692:15-693:12; Appellant's Br. 20. Emphasizing the lack of "direct evidence" regarding the injuries that caused S.T.'s death, Weaver suggests that "reasonable mind[s] could not" have found that he "knowingly caused physical harm" to S.T., and pointing similarly to "other plausible explanations" for S.T.'s injuries, he suggests that the evidence did not support his conviction for endangering a child. *Id.* at 20-22. For the same reasons, he argues that the jury lost its way in finding him guilty of the two offenses. *See* Appellant's Br. 22-24.

{¶ 25} An appellate court reviews a trial court's ruling on a motion under Crim.R. 29 by the same standard applicable to a claim based on the sufficiency of the evidence. *State v. Scott*, 2018-Ohio-198, ___ N.E.3d ___, ¶ 37 (2d Dist.), citing *State v. Bailey*, 2d Dist. Montgomery No. 27177, 2017-Ohio-2679, ¶ 17. Sufficiency of the evidence "is the legal standard applied to determine whether * * * the evidence [in a given case] is legally sufficient as a matter of law to support the jury['s] verdict." *State v. Smith*, 80 Ohio St.3d

89, 113, 684 N.E.2d 668 (1997), citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). On review of a challenge to a conviction based upon the sufficiency of the evidence, the " 'relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *Id.*, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 26} In a challenge based on the weight of the evidence, an appellate court must review the record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the jury clearly lost its way and created a manifest miscarriage of justice warranting reversal and a new trial. *Thompkins*, 78 Ohio St.3d at 387, citing *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983); *State v. Hill*, 2d Dist. Montgomery No. 25172, 2013-Ohio-717, ¶ 8. A trial court's "judgment should be reversed as being against the manifest weight of the evidence 'only in the exceptional case in which the evidence weighs heavily against the conviction.' " *Hill* at ¶ 8, quoting *Martin*, 20 Ohio App.3d at 175.

{¶ 27} Although an appellate court "must defer to the factfinder's decisions whether, and to what extent, to credit the testimony of particular witnesses," the court nevertheless "may determine which of several competing inferences suggested by the evidence should be preferred." (Citation omitted.) *State v. Cochran*, 2d Dist. Montgomery No. 27023, 2017-Ohio-216, ¶ 6. A determination that a conviction is supported by the manifest weight of the evidence is also dispositive of the issue of the sufficiency of the evidence, because "a finding that a conviction is supported by the

manifest weight of the evidence necessarily includes a finding of sufficiency." (Citation omitted.) *State v. McCrary*, 10th Dist. Franklin No. 10AP-881, 2011-Ohio-3161, ¶ 11; *State v. Miller*, 2d Dist. Montgomery No. 25504, 2013-Ohio-5621, ¶ 48, citing *McCrary* at ¶ 11.

**{¶ 28}** Weaver was convicted on Count 1 of murder as the proximate result of felonious assault. To obtain this conviction, the State had to prove, under R.C. 2903.11(A)(1), that Weaver "knowingly * * * [c]ause[d] serious physical harm" to S.T. and, under R.C. 2903.02(B), that S.T. died as a proximate result. A person acts "knowingly <u>regardless of purpose</u>, when [he] is aware that [his] conduct will probably cause a certain result or will probably be of a certain nature." (Emphasis added.) R.C. 2901.22(B). Without an admission, proof "of an accused's purpose or specific intent invariably requires circumstantial evidence." *State v. Mundy*, 99 Ohio App.3d 275, 288, 650 N.E.2d 502 (2d Dist.1994).

**{¶ 29}** When emergency personnel arrived at the church on the evening of November 18, 2015, Weaver initially reported that he had heard a thud while in the bathroom, and as he emerged, he saw S.T. lying face down on the floor, unresponsive. Tr. of Proceedings 510:19-512:19. He speculated that S.T. might have fallen off of a table. *See id.* at 339:15-340:15, 343:2-345:24, 491:7-492:25. Nevertheless, in a subsequent interview, Weaver told a detective that he was spinning S.T. in a circle and lost his balance, causing S.T. to hit a wall. *Id.* at 657:2-657:23, 662:8-665:20 and 667:3-670:22.

**{¶ 30}** A forensic pathologist employed by the Montgomery County Coroner testified that S.T.'s autopsy revealed no fewer than 20 traumas to the front and back of

his head, some of which could have been produced by the impact of knuckles.  Tr. of Proceedings 262:10-262:19, 268:11-273:2, 279:11-286:20.   One of the traumas, a fracture on the back of S.T.'s skull near his brain stem, required "significant force" to produce, comparable to "a car accident" or "maybe a fall from a significant height" in excess of four feet.   *Id.* at 283:1-284:9 and 287:11-288:4.   The pathologist testified further that the trauma to the back of S.T.'s skull, together with the other traumas to his head, were "life-ending injur[ies]" and that "[b]lunt force trauma of the head" caused his death.   *Id.* at 284:10-284:24 and 286:21-287:3.   From the nature of these injuries, the pathologist determined S.T's death to be a homicide.   *Id.* at 286:20-287:3.

{¶ 31} Shaton Smith testified that she knew S.T. and his brother as a result of her acquaintance with S.T.'s previous foster parent, meeting the boys when S.T. was a few months old and interacting with them almost daily until they were transferred to the care of Weaver and his wife.   *Id.* at 375:7-376:4 and 377:3-378:16.   During this time, Smith helped S.T.'s previous foster parent by changing S.T.'s diapers, dressing the boys, preparing food, and running errands; on one occasion, Smith bathed S.T.   *Id.* at 378:12-379:14 and 383:10-383:22.   Smith indicated that S.T. had no serious injuries to her knowledge, that his ability to walk seemed typical for his age, and that he did not seem especially clumsy.   *Id.* at 384:3-385:17.

{¶ 32} An ongoing caseworker with the Children Services Division, responsible for supervising the foster care of children, testified to her experience with S.T. and his brother in the weeks before and after the two boys were placed with the Weavers.   *Id.* at 392:15-393:12, 399:9-401:22.   The case worker found S.T. to be "very sweet, kind [and] lovable" when she first encountered him, but visiting him after a week in the Weavers' care, she

found him withdrawn and tearful.   *See id.* at 400:5-401:22 and 406:19-409:4.   Among other things, the caseworker noted bruises on S.T.'s cheeks, which Shureka Weaver attributed to his brother pushing him down a staircase.   *Id.* at 409:5-409:15.

{¶ 33} An adoption caseworker with the Children Services Division, responsible for finding foster children permanent homes with adoptive parents, testified that she visited the Weavers' residence on the evening of November 17, 2015, to discuss the boys' future placement.   *See id.* at 430:3-430:10, 432:7-433:11.   The caseworker also observed S.T. for several minutes, and although he was in bed and wearing long-sleeved pajamas, she saw no injuries to his face.   *Id.* at 436:9-438:6 and 439:25:440:19.

{¶ 34} Weaver argues that the evidence supported his assertion that he was spinning S.T. in a circle and lost his balance, causing S.T. to strike a wall.   Appellant's Br. 20.   According to Weaver, the pathologist's testimony confirmed that his account was "plausible," along with the testimony of a pediatrician employed by Dayton Children's Hospital who reviewed S.T.'s autopsy report and video excerpts of Weaver's interviews with police.   *Id.*; *see also* Tr. of Proceedings 319:6-320:7, 566:3-567:4, 570:7-572:11 and 593:3-595:23.   Thus, absent any "direct evidence regarding [the cause of S.T.'s] death or injuries," or "living witnesses" to the incident apart from Weaver himself, Weaver insists that "reasonable mind[s]" could not have found "beyond [a] reasonable doubt [that he] knowingly caused harm" to S.T.   Appellant's Br. 20-21.

{¶ 35} On the record before us, we cannot conclude that the jury clearly lost its way in finding Weaver guilty of murder.   Weaver acknowledged that he and S.T. were the only persons at the church throughout the day on November 18, 2015, and they were the only persons on the premises when emergency personnel arrived.   Tr. of

Proceedings 486:13-486:25 and 509:2-510:25. Shaton Smith's testimony and that of the two caseworkers with the Children Services Division established that S.T. showed no sign of having experienced severe head traumas prior to being placed with the Weavers for foster care, and despite Weaver's contention to the contrary, the two medical experts voiced considerable skepticism in response to Weaver's explanation of S.T.'s injuries.

{¶ 36} For instance, the pathologist with the Montgomery County Coroner's Office conceded that Weaver's explanation—that he was spinning S.T. in a circle and lost his balance—was technically "possible," but she also testified that "it [was] not plausible based on the [nature and the] number of injuries [S.T.] [had] on his head." (Emphasis added.) *See id.* at 287:11-289:7 and 319:18-320:7. The pediatrician with Dayton Children's Hospital likewise allowed that "it is conceivable that possibly, if a caretaker [were spinning] a child [such that] the back of [the] child's head [were] to strike a wall, [then] that theoretically [could cause] some sort of an injury, maybe bruising" or "even * * * a skull fracture," though in her "opinion that [was] not a plausible explanation" for all of S.T.'s of injuries, the combination of which she described as "inconsistent" with Weaver's version of events. (Emphasis added.) *Id.* at 594:4-595:23. Presented with Weaver's varying accounts of S.T.'s injuries, his admission that only he and S.T. were present at the church on the day in question, and the independent testimony of two medical experts, the jury reasonably found that Weaver knowingly caused serious physical harm to S.T. and that S.T. died as a proximate result, making Weaver guilty of murder under R.C. 2903.02(B).

{¶ 37} On Count 6, Weaver was convicted of endangering a child under R.C. 2919.22(A). To obtain this conviction, the State had to prove that Weaver, as "the

parent, guardian, custodian, * * * or person in loco parentis" of a child younger than 18, recklessly "create[d] a substantial risk to [S.T.'s] health or safety * * *, by violating a duty of care, protection, or support." *Id.*; *State v. Hill*, 2d Dist. Montgomery No. 24410, 2011-Ohio-5810, ¶ 55. The conviction related primarily to untreated burns suffered by S.T. in advance of his death. *See* Tr. of Proceedings 275:13-275:20, 578:14-582:5 and 713:15-713:24; Bill of Particulars 3-4, Mar. 27, 2017; Appellant's Br. 21; Appellee's Br. 24.

{¶ 38} Shaton Smith testified that she never saw any burns or scars on S.T.'s body before he was placed with the Weavers. *Id.* at 384:3-385:17. In her testimony, the Montgomery County pathologist testified that she observed several first degree and second degree burns on S.T.'s right arm, forearm and hand, which she deemed to be likely caused by contact with "a hot surface of some kind," as opposed to contact with hot water or another liquid at high temperature. Tr. of Proceedings 273:4-275:8. She indicated that the burns should have been treated in light of the risk of infection and scarring, and she estimated that the burns were less than "weeks old." *Id.* at 275:9-276:20. Her counterpart from Dayton Children's Hospital gave nearly identical testimony, and both of them concurred that the burns should have been treated by a medical professional. *See id.* at 275:13-275:20, 578:14-580:11 and 578:14-582:5. Weaver denied that he knew the source of the burns but at one point suggested that S.T. might have stumbled into a radiator or space heater. *See id.* at 494:5-494:16 and 675:17-675:19.

{¶ 39} Again, we cannot conclude that the jury clearly lost its way. The evidence demonstrated that Weaver was S.T.'s foster parent, that he was aware of the burns, and that he did not have them treated by a medical professional. Given the risk of infection

and scarring, S.T.'s burns qualified as "serious physical harm" as that term is defined by R.C. 2901.01(A)(5)(d).  *See Hill* at ¶ 2-3, 5 and 65.  The medical expert testimony provided a reasonable basis for the jury to find that Weaver's inaction had created "a strong possibility" that S.T. had been or would be harmed, and by extension, a reasonable basis for the jury to find further that Weaver had disregarded a "substantial and unjustifiable risk" with "heedless indifference" to the consequences for S.T.  R.C. 2901.01(A)(5)(d), 2901.22(C) and 2919.22(A); *see also Hill* at ¶ 55-59 and 65-66.

{¶ 40} Our determination that the jury did not clearly lose its way in finding Weaver guilty of murder under R.C. 2903.02(B) and endangering a child under R.C. 2919.22(A) obviates the need to evaluate Weaver's contention that the evidence was insufficient to support his convictions for these offenses.  *McCrary*, 10th Dist. Franklin No. 10AP-881, 2011-Ohio-3161, ¶ 11; *Miller*, 2d Dist. Montgomery No. 25504, 2013-Ohio-5621, ¶ 48, citing *McCrary*, 2011-Ohio-3161, ¶ 11.  Weaver's second and third assignments of error are overruled.

{¶ 41} For his fourth assignment of error, Weaver contends that:

> THE PROSECUTOR AND COURT COMMITTED REVERSIBLE ERROR BY VIOLATING APPELLANT'S FIFTH AMENDMENT DUE PROCESS RIGHT TO A FAIR TRIAL.

{¶ 42} In this assignment of error, Weaver complains that the prosecutor made comments during opening and closing statements that prejudiced him.  Appellant's Br. 25.  Weaver additionally faults the trial court in connection with closing statements for sustaining the prosecutor's objection to a remark made by his defense attorney.  *Id.* at 27.

{¶ 43} Prosecutors, in general, "are entitled to considerable latitude in opening and closing arguments." *State v. Whitfield*, 2d Dist. Montgomery No. 22432, 2009-Ohio-293, ¶ 12, citing *Maggio v. City of Cleveland*, 151 Ohio St. 136, 84 N.E.2d 912 (1949), and *State v. Ballew*, 76 Ohio St.3d 244, 667 N.E.2d 369 (1996). To resolve a claim of prosecutorial misconduct, courts evaluate "whether [such] remarks were improper and, if so, whether they prejudicially affected substantial rights of the accused." *State v. Jones*, 90 Ohio St.3d 403, 420, 739 N.E.2d 300 (2000), citing *State v. Smith*, 14 Ohio St.3d 13, 14, 470 N.E.2d 883 (1984). The "touchstone of [this] analysis 'is the fairness of the trial, not the culpability of the prosecutor.' " *Id.*, quoting *Smith v. Phillips*, 455 U.S. 209, 219, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982). Accordingly, "[w]here it is clear beyond a reasonable doubt that a jury would have found the defendant guilty even absent the alleged misconduct, the defendant has not been prejudiced, and his conviction will not be reversed." *State v. Stevenson*, 2d Dist. Greene No. 2007-CA-51, 2008-Ohio-2900, ¶ 42, citing *State v. Loza*, 71 Ohio St.3d 61, 78, 641 N.E.2d 1082 (1994). We "review allegations of prosecutorial misconduct in the context of the entire trial." *State v. Renner*, 2d Dist. Montgomery No. 25514, 2013-Ohio-5463, ¶ 47, citing *Stevenson* at ¶ 42.

{¶ 44} Regarding opening statements, Weaver argues that the prosecutor committed misconduct by telling the jury that it would "hear about the last 56 days of [S.T.'s] short life" in which S.T. was "bruised [and] burned," suffered a skull fracture, and died. Tr. of Proceedings 243:6-243:15; Appellant's Br. 25-26. Weaver describes these remarks as misconduct because "[t]he jury did not hear about the last 56 days" of S.T.'s life, and because the jury would have been prejudiced against him by the prosecutor's implication that he had "tortured [S.T.] for [those] 56 days." Appellant's Br. 26.

{¶ 45} We disagree.  The jury heard ample evidence about S.T.'s life during the period running from September 24, 2015, through November 18, 2015, and the prosecutor's recitation of the various injuries suffered by S.T. accurately reflected the testimony afterward offered by the State's witnesses.  In other words, the prosecutor's remarks were not improper and did not constitute prosecutorial misconduct.  *Jones*, 90 Ohio St.3d at 420; *State v. Taylor*, 2d Dist. Montgomery No. 23990, 2014-Ohio-3647, ¶ 35-37 and 39.

{¶ 46} Regarding closing statements, Weaver charges the trial court with error for overruling his objection when the prosecutor commented that "[t]here [was] no legal defense" for the conduct of which Weaver stood accused.  Tr. of Proceedings 760:19-761:12; Appellant's Br. 26-27.  Weaver argues that the trial court erred because the comments amounted to an "attack [on him for his] failure to testify at trial" in abrogation of his Fifth Amendment right.  *Id.* at 27.  The context in which the prosecutor made the foregoing comment, however, undermines Weaver's argument.

{¶ 47} Moments earlier, the prosecutor remarked that what had happened to S.T. "was not an accident," and the court sustained Weaver's objection in response, reminding the parties and the jury that there would be "no instruction on accident."  Tr. of Proceedings 760:19-761:4.  Although the prosecutor's use of the phrase "no legal defense" was dubious, his intent seems to have been either to portray the abuse of S.T. as indefensible in the ordinary sense of the word, or as the State suggests in its brief, to emphasize that the jury "could not base its verdict on 'sympathy.' "  *See id.* at 760:8-762:1; Appellee's Br. 31.  We find accordingly that the remark was not improper.  Even otherwise, being an isolated remark made at the very end of a long trial, we find that it did

not result in unfair prejudice to Weaver.

{¶ 48} Regarding Weaver's closing statement, the prosecutor objected to Weaver's attempted use of a hypothetical scenario to illustrate the proposition that a parent could cause physical harm to a child without committing child abuse. *See* Tr. of Proceedings 728:24-729:14. The court sustained the objection because its research indicated "that closings are to be factually based," and irrespective of the "wide latitude" accorded the parties in making their closing statements, it viewed Weaver's hypothetical example as impermissibly detached from the record. *See id.* at 730:6-732:16.

{¶ 49} We concur with the trial court's ruling on the objection. Closing statements may rely only on evidence entered into the record, as well as reasonable inferences drawn from that evidence, but the challenged portion of Weaver's closing statement involved a hypothetical set of facts for which the record included no evidence at all. *See Howard v. HCR ManorCare, Inc.*, 2018-Ohio-1053, ___ N.E.3d ___, ¶ 91-94 (2d Dist.); *State v. Thompson*, 3d Dist. Henry No. 7-16-10, 2017-Ohio-792, ¶ 25.

{¶ 50} We find that the prosecutor's challenged comment during opening statements was not improper, that the trial court did not err by overruling Weaver's objection to the prosecutor's closing statement, and that the trial court correctly sustained the prosecutor's objection to Weaver's closing statement. Weaver's fourth assignment of error is overruled.

{¶ 51} For his fifth assignment of error, Weaver contends that:

THERE SHOULD HAVE BEEN SEVERANCE OF PARTIES' TRIAL [sic].

{¶ 52} Here, Weaver argues that the trial court erred by overruling his wife's motion for a separate trial. Appellant's Br. 28-29. Had they been tried separately, Weaver

posits that his "wife could have testified favorably on [his] behalf." *Id.* at 29. Weaver did not join in his wife's motion or move for severance on his own behalf. Tr. of Proceedings 22:20-23:6.

**{¶ 53}** In cases like the instant matter, the law favors "[j]oinder [because] the avoidance of multiple trials * * * 'conserves judicial and prosecutorial time, lessens the not inconsiderable expenses of multiple trials, diminishes inconvenience to witnesses, and minimizes the possibility of incongruous [outcomes] in successive trials before different juries.' " *State v. Daniels*, 92 Ohio App.3d 473, 484, 636 N.E.2d 336 (1st Dist.1993), quoting *State v. Thomas*, 61 Ohio St.2d 223, 225, 400 N.E.2d 401 (1980); *State v. McCrary*, 2d Dist. Montgomery No. 23360, 2010-Ohio-2011, ¶ 17, quoting *Daniels*, 92 Ohio App.3d at 484. An appellate court, however, " ' "will not consider any error * * * not call[ed] to the trial court's attention at a time when [the] error could have been avoided or corrected by the trial court." ' " (Citation omitted.) *See State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, ¶ 15, quoting *State v. Awan*, 22 Ohio St.3d 120, 122, 489 N.E.2d 277 (1986), quoting *State v. Childs*, 14 Ohio St.2d 56, 236 N.E.2d 545 (1968), paragraph three of the syllabus. Because Weaver neither moved for severance of his trial nor joined his wife's motion, we review only for plain error. *See, e.g., McCrary*, 2010-Ohio-2011, ¶ 20.

**{¶ 54}** We find that the trial court did not err by trying Weaver and his wife together. The single-count indictment charging Weaver's wife with endangering a child arose from the same circumstances as the corresponding charge in Count 6 of the indictment against Weaver, and he has not shown or even alleged that he and his wife had incompatible defenses or that their interests were otherwise in conflict. *See, e.g., State v. Porcher*, 2d

Dist. Montgomery No. 24058, 2011-Ohio-5976, ¶ 13-19. Moreover, despite Weaver's contention that his wife would have been able to testify on his behalf had they been tried separately, he makes no attempt to explain why she did not or could not have testified at their joint trial. *See id.* at ¶ 16 (citing authority indicating that a defendant seeking severance bears the burden of demonstrating the necessity for separate trials). Weaver's fifth assignment of error is overruled.

{¶ 55} For his sixth and final assignment of error, Weaver contends that:

APPELLANT HAD INEFFECTIVE ASSISTANCE OF COUNSEL.

{¶ 56} Finally, Weaver argues that his defense attorney did not render effective assistance, blaming his attorney for failing to object to the prosecutor's opening statement on the basis of the "56 days" remark, and for failing either to move for severance, or to join in Shureka Weaver's motion to sever. Appellant's Br. 31. Given that we have already determined that the prosecutor's remarks during opening statements were not improper, and that the trial court did not err by overruling Shureka Weaver's motion, the issues raised in this last assignment of error are effectively moot. Consequently, Weaver's sixth assignment of error is overruled.

### III. Conclusion

{¶ 57} We find that the trial court did not err by admitting the testimony of Shaton Smith and the cruiser camera recording over Weaver's objections; that the jury did not clearly lose its way in finding Weaver guilty on Counts 1 and 6; that the prosecutor's comments during opening and closing statements did not constitute misconduct; that the trial court properly sustained the prosecutor's objection to Weaver's closing statement; and that the trial court did not err by jointly trying Weaver and his wife. Finding further

that Weaver's sixth assignment of error is moot, we affirm Weaver's convictions.

. . . . . . . . . . . . .

DONOVAN, J. and FROELICH, J., concur.

Copies mailed to:

Mathias H. Heck, Jr.
Michael J. Scarpelli
Glenda A. Smith
Hon. Mary Katherine Huffman