OPINION
{¶ 1} Defendant, Stanley Williamson, appeals from his conviction and sentence for robbery.
 {¶ 2} On November 14, 2002, between 4:00 and 4:30 p.m., Defendant entered the CVS Pharmacy in downtown Dayton. The cashier, Antionique Passmore, looked down aisle five and saw Defendant drop two boxes, red and green in color. Defendant picked up the boxes and appeared to put them inside his coat, which was brown with fur trim. Ms. Passmore told a co-worker, Sarah Irvin, to "go to aisle five." Ms. Irvin understood the instruction to mean that someone was shoplifting in aisle five.
 {¶ 3} Ms. Irvin approached Defendant to ask him if he intended to pay for the items he had taken. Ms. Irvin walked beside Defendant as he approached the front door, intending to allow Defendant to pass through the security sensors before confronting him. Before reaching that point, however, Defendant turned to Ms. Irvin, made a fist, and told her to get out of his face or he would hit her. Ms. Passmore and another employee, Carla Banks, heard this threat.
 {¶ 4} The threat frightened Ms. Irvin and she backed away as Defendant walked out the front door, setting off the security alarm. The store manager, Jeff Huelsman, heard the commotion, and was walking up toward the front doors when Defendant left the store. Huelsman got a "pretty good look" at Defendant as he exited the store. Ms. Irvin told Huelsman what had happened and he immediately called police.
 {¶ 5} Police responded to the scene, and a few minutes later they located Defendant at a bus stop at Third and Main Streets, one block from the CVS store. Defendant wore a dark brown coat with a light brown collar. Huelsman accompanied police to the bus stop and identified Defendant as the robber. Police recovered two boxes of Flintstone vitamins that were red, green and yellow in color. Huelsman was able to identify the boxes of vitamins as CVS property by their tags.
 {¶ 6} Police transported Defendant back to the CVS store where Ms. Irvin identified him as the robber. The next day, November 15, 2002, Detective Hirst interviewed Defendant at the police station. Defendant admitted stealing the boxes of vitamins from the CVS store but denied threatening the store clerks.
 {¶ 7} Defendant was indicted on one count of robbery. R.C.2911.02(A)(3). Following a jury trial Defendant was found guilty. Upon his conviction the trial court sentenced Defendant to two years imprisonment. Defendant timely appealed to this court from his conviction and sentence.
FIRST ASSIGNMENT OF ERROR
 {¶ 8} "Appellant's conviction was against the manifest weight of the evidence."
 {¶ 9} Defendant was found guilty of violating R.C. 2911.02(A)(3) which provides:
 {¶ 10} "No person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall do any of the following:
 * * * {¶ 11} "Use or threaten the immediate use of force against another."
 {¶ 12} A weight of the evidence argument challenges the believability of the evidence; which of the competing inferences suggested by the evidence is more believable or persuasive. State v.Hufnagle (Sept. 6, 1996), Montgomery App. No. 15563, unreported. The proper test to apply to that inquiry is the one set forth in State v.Martin (1983), 20 Ohio App.3d 172, 175:
 {¶ 13} "[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."
 {¶ 14} In State v. Lawson (August 22, 1997), Montgomery App. No. 16288, this court stated:
 {¶ 15} "[b]ecause the factfinder . . . has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." Id., at p. 4.
 {¶ 16} This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the trier of facts lost its way in arriving at its verdict.State v. Bradley (October 24, 1997), Champaign App. No. 97-CA-03.
 {¶ 17} Defendant argues that his identifications as the robber by Jeff Huelsman and Sarah Irvin shortly after the crime occurred were the result of a "one-man showup" that was unfairly suggestive and violated his right to due process of law. To the extent Defendant now argues that this identification evidence should have been excluded from trial, we note that Defendant never filed any motion to suppress that evidence. Thus, Defendant has waived all but plain error regarding that issue. Crim.R. 12(C), (H); State v. Ruby, 149 Ohio App.3d 541, 2002-Ohio-5381.
 {¶ 18} The critical inquiry with respect to pretrial identifications is whether on the totality of the circumstances the identification was reliable, notwithstanding that the identification procedure may have been suggestive. Neil v. Biggers (1972), 409 U.S. 188,93 S.Ct. 375, 34 L.Ed.2d 401; State v. Davie (1997), 80 Ohio St.3d 311,686 N.E.2d 245. The factors to consider include the opportunity of the witness to view the suspect at the time of the crime, the witness's degree of attention, the accuracy of the witness's prior description, the level of certainty demonstrated by the witness at the pretrial identification, and the length of time between the crime and the pretrial identification. Id.
 {¶ 19} The totality of the facts and circumstances in this case demonstrate that Ms. Irvin and Mr. Huelsman had a reasonable opportunity to observe Defendant at the CVS store, and that only a few minutes had elapsed between the robbery and their identification of Defendant. Those identifications were reliable, and we see no error, much less plain error, in admitting them. Those identifications, along with the recovery from Defendant of the vitamins stolen from the CVS store, are clearly sufficient to establish Defendant's identity as the perpetrator of this robbery. More importantly, however, Defendant confessed to police that he stole the two boxes of vitamins from the CVS store, which removed any issue regarding the identity of the perpetrator of this offense.
 {¶ 20} Defendant also claims that no witnesses saw him steal the vitamins from the CVS store. The cashier, Ms. Passmore, testified that Defendant picked up two red and green boxes after dropping them on the floor, and appeared to place them inside his brown coat. When Defendant walked out of the store without paying for items, the security alarm went off. Furthermore, when police apprehended Defendant a few minutes later just one block from CVS, they recovered two boxes of vitamins that were red, green and yellow in color. The tags on the boxes identified them as CVS property. Additionally, Defendant confessed to police that he stole these items.
 {¶ 21} Lastly, Defendant points out that while he confessed to stealing the vitamins, he denied threatening anyone. Ms. Irvin, Ms. Passmore and Ms. Banks, all CVS employees, testified about the threat Defendant made to use force against Ms. Irvin. The jury obviously chose to believe the CVS employees rather than Defendant, which it was entitled to do. This was a credibility determination and the jury did not lose its way simply because it chose to believe the State's witnesses instead of Defendant.
 {¶ 22} In reviewing this record as a whole, we cannot say that the evidence weighs heavily against a conviction, that the jury lost its way, or that a manifest miscarriage of justice has occurred. Defendant's conviction is not against the manifest weight of the evidence.
 {¶ 23} The first assignment of error is overruled.
SECOND ASSIGNMENT OF ERROR
 {¶ 24} "The trial court erred and abused its discretion in refusing to permit the defendant to show the jury the exculpatory videotape in its entirety when the same was critical to the defendant's defense."
 {¶ 25} Defendant argues that the trial court abused its discretion in denying his request to admit a surveillance videotape from the CVS store. Defendant claims that this was relevant exculpatory evidence because he does not ever appear on the surveillance tape, and that the trial court's exclusion of this evidence denied him a fair trial and prevented him from presenting his defense.
 {¶ 26} The admission or exclusion of evidence is a matter within the trial court's sound discretion. Peters v. Ohio State LotteryCommission (1992), 63 Ohio St.3d 296; State v. Sage (1987),31 Ohio St.3d 173. Such decisions will not be disturbed on appeal absent an abuse of discretion and resulting prejudice. State v. Martin (1985),19 Ohio St.3d 122; Sage, supra. An abuse of discretion means more than an error of law or an error in judgment. It implies an arbitrary, unreasonable, unconscionable attitude on the part of the trial court.State v. Adams (1980), 62 Ohio St.2d 151.
 {¶ 27} Jeff Huelsman, the manager of the CVS store, testified that his store has a videotape surveillance system that is always turned on and was working on November 14, 2002. Mr. Huelsman gave the videotape to police. Detective Hirst testified that he reviewed parts of that surveillance tape and did not see either Defendant on that videotape, or the events at issue in this case.
 {¶ 28} Defendant's counsel asked to have the videotape admitted into evidence and played for the jury. Defendant argued that the tape was exculpatory evidence because Defendant's counsel had watched the tape in its entirety and Defendant never appeared on the videotape. The trial court denied Defendant's request to admit the videotape, observing that it was of poor quality, that there was no date or time on the tape and therefore no way of knowing whether the tape even included the events at issue in this case, and that the tape required specialized equipment to properly play it. The court concluded that the tape had not been properly identified and lacked probative value.
 {¶ 29} Detective Hirst testified that the surveillance tape was poor quality, that it had to be played at slow speed just to get the images to be viewable, that it had moments of clarity, and that the tape constantly switches from one section of the CVS store to another. There is no evidence to the contrary. Under those circumstances, the fact that Defendant is not discernible on the tape is not particularly significant, much less exculpatory evidence demonstrating that he did not commit this offense. Even assuming arguendo that the evidence was sufficient to satisfy Evid.R. 901 and demonstrate that the tape was what Defendant claimed it to be, a continuous surveillance of the CVS store on the day this robbery occurred, Defendant nevertheless suffered no material prejudice as a result of the trial court's refusal to admit the tape.
 {¶ 30} The State did not claim that Defendant was visible on the surveillance tape. To the contrary, Detective Hirst testified that upon reviewing the videotape he did not see either Defendant or the robbery in question. More importantly, Defendant confessed to police that he entered the CVS store and stole the vitamins. Defendant simply denied that he threatened the use of force against any of the store clerks. Thus, Defendant's presence in the store was not an issue in this case. The surveillance video was not Brady material that was material to Defendant's guilt because there is no reasonable probability that had the evidence been presented, the result of the trial would have been different. Brady v. Maryland (1963), 373 U.S. 83. We see no abuse of discretion on the part of the trial court in excluding this evidence.
 {¶ 31} The second assignment of error is overruled.
THIRD ASSIGNMENT OF ERROR
 {¶ 32} "Appellant submits that he was denied effective assistance of counsel, and as a result of the specific acts and omissions of his trial counsel, that the trial result is clearly unreliable."
 {¶ 33} In Strickland v. Washington (1984), 466 U.S. 668,104 S.Ct. 2052, the United States Supreme Court set forth the standard for judging claims of ineffective assistance of trial counsel:
 {¶ 34} "A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or setting aside of a death sentence requires that the defendant show, first, that counsel's performance was deficient and, second, that the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial.
 {¶ 35} "The proper standard for judging attorney performance is that of reasonably effective assistance, considering all the circumstances. When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness. Judicial scrutiny of counsel's performance must be highly deferential, and a fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.
 {¶ 36} "With regard to the required showing of prejudice, the proper standard requires the defendant to show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. A court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury." Syllabus, 2. Accord: State v.Bradley (1989), 42 Ohio St.3d 136.
 {¶ 37} Defendant claims that his trial counsel performed deficiently by failing to file a motion to suppress the pretrial identifications and his incriminating statements to police.
 Identifications {¶ 38} Defendant argues that his pretrial identifications as the robber by Sarah Irvin and Jeff Huelsman shortly after the crime occurred were the result of a "one-man showup" that was unduly suggestive because Defendant was in the back seat of a police cruiser at the time. As we noted in overruling Defendant's first assignment of error, the totality of the facts and circumstances demonstrate that Ms. Irvin and Mr. Huelsman had a reasonable opportunity to view Defendant, their attention was focused upon him, and the period of time between the crime and their identification was brief. Rather than a very substantial likelihood of misidentification, those factors suggest that the identifications were reliable and therefore admissible. Neil v. Biggers (1972), 409 U.S. 188.
 {¶ 39} A motion to suppress the identifications would have had no reasonable chance of success, and counsel did not perform deficiently in failing to file such. State v. Benson (July 14, 1995), Montgomery App. No. 14427. Moreover, because Defendant confessed to entering the CVS store and stealing the vitamins, there is no reasonable probability of a different outcome in the trial had defense counsel moved to suppress the pretrial identifications. Prejudice resulting from counsel's failure to file such a motion has not been shown.
 Statements to Police {¶ 40} Defendant confessed to police that he entered the CVS store and stole the vitamins. Defendant denied, however, threatening to use force against any of the store employees. Defendant claims that his counsel performed deficiently in failing to file a motion to suppress his statements to police. In that regard Defendant only points out that his confession was not videotaped or reduced to writing. However, Defendant fails to point to any evidence which suggests that his confession was involuntary.
 {¶ 41} The evidence in this record demonstrates that before being questioned Defendant was advised of his Miranda rights, and he indicated that he understood those rights and was willing to waive them and speak with police. Defendant, who is forty-five years old and has an extensive criminal record, has been advised of his rights before, has completed eleven years of school, and was not under the influence of alcohol or drugs. The interrogation lasted only thirty to forty minutes, and there was no physical deprivation or mistreatment, and no threats or promises as inducements.
 {¶ 42} On this record there is no legitimate basis for filing a motion to suppress Defendant's statements to police, and counsel did not perform deficiently in failing to file such. No ineffective assistance of counsel has been demonstrated.
 {¶ 43} The third assignment of error is overruled. The judgment of the trial court will be affirmed.
Wolff, J. and Young, J., concur.