[Cite as *State v. Thomson*, 2020-Ohio-600.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2018-CA-135 |
| | : | |
| v. | : | Trial Court Case No. 2018-CR-516 |
| | : | |
| JOSEPH THOMSON | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 21st day of February, 2020.

. . . . . . . . . . .

JOHN M. LINTZ, Atty. Reg. No. 0097715, Clark County Prosecutor's Office, Appellate Division, 50 East Columbia Street, Suite 449, Springfield, Ohio 45502
      Attorney for Plaintiff-Appellee

MARK J. BAMBERGER, Atty. Reg. No. 0082053, P.O. Box 189, Spring Valley, Ohio 45370
      Attorney for Defendant-Appellant

. . . . . . . . . . . . .

TUCKER, J.

{¶ 1} Defendant-appellant, Joseph Thomson, appeals from his convictions for one count of improperly handling a firearm in a motor vehicle and one count of receiving stolen property, with an attached firearm specification. Raising three assignments of error, Thomson argues that his convictions should be reversed because his defense counsel did not provide effective assistance; because the trial court erred by allowing the State to present expert testimony despite the State's failure to comply with Crim.R. 16(K); and because the trial court erred further by imposing consecutive terms in prison without making the findings required by R.C. 2929.14(C)(4). We find that Thomson's defense counsel rendered professionally reasonable representation, and that the trial court did not err either by admitting the purportedly expert testimony or by imposing consecutive terms of imprisonment. Therefore, the trial court's judgment is affirmed.

## I. Facts and Procedural Background

{¶ 2} While patrolling as part of the "Safe Streets Task Force" on July 26, 2018, Officers Melvin and Sanders of the Springfield Police Division observed a vehicle turning left from Southern Avenue onto Wittenberg Avenue without its turn signal being activated.[1] Transcript of Proceedings 109:7-109:19, 125:10-125:25, 128:13-129:3 and 151:19-153:13, Oct. 29, 2018. The officers effected a traffic stop shortly afterward, near the intersection of Wittenberg Avenue and Rosewood Avenue. *Id.* at 129:4-129:8 and 154:20-155:4. Once the vehicle came to a halt, a male passenger in the front of the vehicle ran from the vehicle, and Officer Sanders gave chase in an ultimately

---

[1] The Safe Streets Task Force is an initiative of the Springfield Police Division focused on "gun violence[,] * * * drug dealing and gang interdiction." *See* Transcript of Proceedings 109:7-109:19.

unsuccessful attempt to apprehend him.[2]   *Id.* at 155:8-157:15.

{¶ 3} At the same time, Officer Melvin approached the driver's side of the vehicle, and as he did so, he saw Thomson reaching over the vehicle's center console with his hand on a gun underneath the front passenger's seat.   *Id.* at 130:10-130:21.   The officer immediately pulled Thomson from the vehicle and placed him in handcuffs.   *Id.* at 130:22-130:25.   After Officer Sanders returned, Officer Melvin read Thomson his rights, and upon being questioned, Thomson identified the passenger who fled as "Joshua Wilson," and he denied that he knew the gun was in the vehicle.   *Id.* at 132:10-133:18. Officer Melvin inspected the gun and found it to be loaded with a full magazine, as well as a bullet in the chamber.   *Id.* at 135:12-135:22.   He also discovered that the gun had been reported stolen from Franklin County.   *See id.* at 144:25-145:16.   The gun's owner was Sean Alfred, who later appeared as a witness for the State at Thomson's trial.   *Id.* at 97:17-101:18.

{¶ 4} On August 6, 2018, a Clark County grand jury indicted Thomson as follows: Count 1, improperly handling a firearm in a motor vehicle, a fourth degree felony pursuant to R.C. 2923.16(B) and (I); Count 2, receiving stolen property, a fourth degree felony pursuant to R.C. 2913.51(A) and (C); and attached to Count 2, a firearm specification under R.C. 2941.141(A).   Thomson pleaded not guilty.

{¶ 5} On October 29, 2018, Thomson's case was tried to a jury, which found him guilty as charged.   Thomson appeared for sentencing on November 20, 2018, and the

---

[2] Two women were seated in the rear of the vehicle.   Transcript of Proceedings 131:1-131:4.   Their presence in the vehicle seems to have been the extent of their involvement in this case.

trial court sentenced him to serve consecutive terms in prison of one year for the offense of improperly handling a firearm in a motor vehicle; 18 months for the offense of receiving stolen property; and one year for the firearm specification, amounting to an aggregate term of three and one-half years. The court filed a judgment entry that same day, after which Thomson timely filed a notice of appeal on December 10, 2018.

## II. Analysis

{¶ 6} For his first assignment of error, Thomson contends that:

THE TRIAL DEFENSE COUNSEL WAS INEFFECTIVE, IN TURN LEADING TO VIOLATIONS OF THE DEFENDANT'S FOURTH, SIXTH, AND FOURTEEN [SIC] AMENDMENT RIGHTS[.]

{¶ 7} Thomson argues that his defense counsel provided ineffective representation in three respects. Appellant's Brief 10-16. Specifically, Thomson faults counsel for "put[ting] on no defense"; for not challenging the admissibility of a police officer's testimony regarding the operability of the gun found in the vehicle that Thomson was driving; and for not asking the court to declare a mistrial as the result of the jury's receipt of unfairly prejudicial evidence suggesting that Thomson belonged to a criminal gang. *See id.* at 13-15.

{¶ 8} To prevail on a claim of "ineffective assistance of counsel, a defendant must satisfy the two-pronged test in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)." *State v. Cardenas*, 2016-Ohio-5537, 61 N.E.3d 20, ¶ 38 (2d Dist.). The *Strickland* test requires a showing that: "(1) defense counsel's performance was so deficient that [it did not fulfill the right to assistance of counsel] guaranteed under the Sixth Amendment to the United States Constitution; and (2) * * *

defense counsel's errors prejudiced the defendant." *Id.*, citing *Strickland* at 687. Judicial "scrutiny of counsel's performance must be highly deferential," so "a [reviewing] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance * * *." *Strickland* at 689, citing *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955). To show prejudice, the defendant bears the burden to demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of [a given] proceeding would have been different." *Id.* at 694; *State v. Southern*, 2d Dist. Montgomery No. 27932, 2018-Ohio-4886, ¶ 47. A failure to make either showing defeats the claim. *Cardenas* at ¶ 38.

{¶ 9} In the first part of his argument, Thomson blames the "miserable" outcome of his trial on his defense counsel's "lack of activity," by which he refers to counsel's evident decision to call no witnesses and present no other evidence. Appellant's Brief 13. He suggests that counsel could have raised reasonable doubts in the minds of the jurors by "calling into question the true thief of the stolen gun in question," by "making an argument that [Thomson] was getting the gun to hand to [sic] the police," by "calling out the highly-prejudicial [sic] and circumstantial tie between [Thomson]'s alleged gang relations and criminal activity on his part," and by reminding the jurors that Thomson had no documented history of participating in "gang-related violence."[3] *See id.* at 12.

{¶ 10} None of these suggestions, however, accounts for the approach actually

---

[3] Officer Melvin testified that he saw Thomson's "hand on the gun" when he approached the driver's side of the car that Thomson had been driving. Transcript of Proceedings 130:10-130:21. The suggestion that counsel should have argued that Thomson "was getting the gun to hand to the police" seems to be a reference to Officer's Melvin's testimony. See Appellant's Brief 12-13.

taken by counsel, or for Thomson's decision not to testify on his own behalf. During opening statements, counsel characterized the State's case against Thomson as little more than

> a minor traffic offense [for which Thomson] was pulled over. There were four people in the car [in total]. One took off running, and the police found a gun in the car.
>
> That's the case. It's not about gangs. It's not about anything else. The police were not able to catch the guy who took off, so they pointed the finger at [Thomson].
>
> Well, fair enough. And I'm saying to you, prove it. Give me some fingerprints. Give me some DNA. Give me some connection between [Thomson] and the weapon that was in the car. And they don't have it. Now, they're going to have excuses for why they don't have it.
>
> And they're going to say, "[w]ell, you know, don't worry about it because he's in a gang." Uh-uh. That doesn't work that way. You need to stick to your oath[s].

Transcript of Proceedings 96:13-97:5. Likewise, during closing statements, counsel made the following remarks:

> Ladies and gentlemen, I have got really just two words to say to you and it's [sic]: Joshua Wilson. You know, there's one person [who] ran from the car. The gun was found where that person was sitting.
>
> So rather than get the real guy, they bring in all this stuff about gangs. Okay. The issue isn't whether or not [Thomson]'s in a gang. It's not

whether he's a nice guy or not.

> * * * The issue is what is the evidence that the government brought in to prove somebody guilty of a crime. And it's not there. What evidence is there that [Thomson], or anybody except for Mr. Alfred, knew that that gun had been stolen[?] How did that gun get in the car? We don't know. Well, the government has got to prove that. Okay. And they did not prove that.
>
> There were four people in the car[.] [O]ne [of them] took off; the gun [had been] by his feet. That's, you know, kind of a reasonable inference that the guy with the gun is the one who is gonna take off.

*Id.* at 190:14-191:8. Thomson's counsel, then, did attempt to convince the jury that the passenger who fled from the scene of the traffic stop was the person truly guilty of the offenses for which Thomson was being tried, and further, that the jury should disregard the evidence of Thomson's gang affiliation. Although counsel did not attempt to convince the jury that Officer Melvin saw Thomson's hand on the gun only because Thomson was picking it up to "hand [it] to the police," Thomson chose not to testify. Appellant's Brief 12. Counsel therefore had no foundation in the record on which to base an assertion that Thomson merely intended to hand the gun to Officer Melvin.

{¶ 11} Moreover, "[d]ecisions about what evidence to present," if any, "and which witnesses to call," if any, "are committed to counsel's professional judgment." (Citations omitted.) *State v. Williams*, 90 Ohio St.3d 493, 2003-Ohio-4396, 794 N.E.2d 27, ¶ 127. Such decisions are "ordinarily [deemed to be] matter[s] of trial strategy that will not be second-guessed by a reviewing court." *See State v. Mills*, 2d Dist. Greene No. 2002-

CA-114, 2004-Ohio-267, ¶ 8, citing *State v. Treesh*, 90 Ohio St.3d 460, 490, 739 N.E.2d 749 (2001). A decision "not to call a [particular] witness," for example, "is afforded a presumption of reasonableness," and to overcome the presumption, a party seeking reversal of a conviction on the basis of ineffective assistance of counsel "must establish that the testimony of [that] witness would have significantly assisted the defense and that the testimony would have affected the outcome of the case." *State v. Ramirez*, 12th Dist. Clermont No. CA2004-06-046, 2005-Ohio-2662, ¶ 39; *State v. Jones*, 12th Dist. Butler No. CA2001-03-056, 2002-Ohio-5505, ¶ 22.

{¶ 12} Thomson criticizes counsel for not issuing subpoenas to the "other witnesses who were at the scene that day[,] [who] could have * * * testif[ied] that [he] was merely driving the vehicle and was not a part of the alleged offense [sic]," and for introducing "no evidence * * * to dispute [the State's allegation that he] kn[e]w the gun in question was stolen." Appellant's Brief 13. Yet, Thomson fails to cite any evidence on the record indicating that any of the three passengers who were in the vehicle with him would have offered favorable testimony or would even have been available to testify; regardless, assuming that one or more of the passengers had testified, their testimony would not have changed the fact that Officer Melvin saw Thomson in a motor vehicle with his hand on a gun, which all but proved Thomson guilty of improperly handling a firearm in a motor vehicle.[4] As well, with respect to the charge of receiving stolen property, Thomson fails to explain how the passengers could have demonstrated their competence

---

[4] To prove Thomson guilty of violating R.C. 2923.16(B), the State had to show that Thomson knowingly possessed a loaded firearm in a motor vehicle such that, without his needing to leave the vehicle, the firearm was accessible to him. *See Ohio Jury Instructions*, CR Section 523.16 (Rev. Dec. 8, 2018).

to testify on the question of whether he knew, or should have known, that the gun was stolen, and he does not specify what non-testimonial evidence his counsel should have introduced to prove that he did not know.[5] *See, e.g.*, Evid.R. 602 (requiring that a witness have "personal knowledge" of any matters about which the witness testifies); *State v. Hayden*, 4th Dist. Scioto No. 18 CA 3839, 2019-Ohio-1926, ¶ 78 (describing personal knowledge as that information which a person acquires directly through the person's own sensory perception).

{¶ 13} In the second part of his argument, Thomson maintains that counsel "should have demanded a *Daubert* [h]earing" regarding "the scientific evidence being provided by the State as to the subject gun."[6] Appellant's Brief 14. The evidence to which Thomson refers is the testimony offered by Officer Jason Byron of the Springfield Police Division. Officer Byron, who among other things was "a shift-level crime scene technician" for 10 of his 21 years as a police officer, testified that when he "took [the gun] over to the [underground shooting range at the Clark County] Sheriff's Department * * * and fired it twice," a bullet flew from the barrel each time he squeezed the trigger. *See* Transcript of Proceedings 164:13-164:19, 167:2-168:2 and 175:10-175:24. Additionally, the officer testified that he attempted to recover fingerprints for examination by the Bureau of

---

[5] To prove Thomson guilty of violating R.C. 2913.51(A), the State had to show that Thomson received, retained or disposed of the gun; that the gun was legally the property of another person; and that Thomson knew or had reasonable cause to believe that the gun had been obtained through the commission of a theft offense, regardless of whether Thomson himself had committed the underlying theft offense. *See also* R.C. 2913.51(B); *Ohio Jury Instructions*, CR Section 513.51 (Rev. Jan. 11, 2014).

[6] Thomson also maintains that counsel should have demanded a *Daubert* hearing regarding "other matters to be [sic] presented by the State at trial," but he fails to specify which other matters he has in mind. Appellant's Brief 14.

Criminal Investigation but found none. *Id.* at 175:25-176:18.

{¶ 14} According to Thomson, his counsel "should have * * * challenged" the "evidence that the right gun was being discussed and that [he] had handled [it]," given that the State did not find his fingerprints on it. Appellant's Brief 14. Officer Byron, however, never testified that Thomson had handled the gun or even that it was the gun found in the vehicle Thomson was driving on July 26, 2018. *See* Transcript of Proceedings 174:8-179:23. Instead, the officer testified simply that he tested the same gun introduced into evidence as State's Exhibit "1A," which he had received in an envelope labelled with the case number assigned by the Springfield Police Division, Thomson's name, the names of Officers Melvin and Sanders, and a description of the gun.[7] The testimony "tying [Thomson] to the * * * gun" came from Officer Melvin, who took the stand before Officer Byron and testified that State's Exhibit 1A was the same gun that he had recovered from the scene of Thomson's arrest. Appellant's Brief 14; Transcript of Proceedings 135:12-137:24. Officer Melvin need not have been qualified as an expert to testify that he recognized the gun.[8]

{¶ 15} In the third part of his argument, Thomson insists that the presentation of testimony indicating that he was affiliated with a criminal gang "should have led to an

---

[7] The envelope was admitted into evidence as State's Exhibit "1." Transcript of Proceedings 174:8-180:17.

[8] The State interpreted the second part of Thomson's argument to relate to Officer Byron's account of testing the gun by firing it twice. Appellee's Brief 5-6. Thomson offers no express challenge to that part of Officer Byron's testimony, but even if he had, Officer Byron testified merely that a bullet was propelled from the gun's barrel each time he squeezed the trigger. A lay person would have been competent to make the same observation.

immediate mistrial [as a result] of [unfair] prejudice against [him]." Appellant's Brief 15-16. He accuses the State of offering the testimony in an attempt to prove him "guilt[y] by association." *Id.* at 16.

{¶ 16} A mistrial should "be declared only when * * * a fair trial is no longer possible." (Citations omitted.) *State v. Franklin*, 62 Ohio St.3d 118, 127, 580 N.E.2d 1 (1991). Where the circumstances do not indicate that a fair trial was impossible, or that the trial court would have sustained a motion for a mistrial, a party's trial counsel will generally not be held to have been ineffective for failing to make such a motion. *See State v. Perander*, 2d Dist. Montgomery No. 26182, 2015-Ohio-1752, ¶ 22. Whether "to grant a mistrial is a question left [in the first instance to] the discretion of the trial court." (Citation omitted.) *State v. Wilkins*, 183 Ohio App.3d 824, 2009-Ohio-4575, 919 N.E.2d 241, ¶ 51 (2d Dist.).

{¶ 17} Here, the State filed a notice pursuant to Evid.R. 404(B) on October 22, 2018, announcing its intent to present the gang-related evidence, and Thomson's counsel filed an objection on October 25, 2018. In its entry of October 26, 2018, the trial court determined that it would "exclude the * * * evidence" unless Thomson sought to make "his "knowledge or possession of the firearm an issue," in which case the court would "allow the * * * evidence." At trial, Officer Melvin testified at some length about Thomson's gang affiliation, and Thomson's counsel raised a continuing objection that the court promptly overruled without analysis. Transcript of Proceedings 114:15-115:24.

{¶ 18} The court's pretrial entry and its ruling on counsel's continuing objection demonstrate that the court would not have granted a motion for a mistrial. Thomson, consequently, has not shown that his counsel's performance was thus deficient, or that

counsel's purported failure to move for a mistrial caused him prejudice.

{¶ 19} Although Thomson argues that counsel should have moved for a mistrial because the gang-related testimony was unfairly prejudicial, Thomson never directly challenges the trial court's decision to admit the testimony. Appellant's Brief 10-18. Counsel, however, based his continuing objection in part on Evid.R. 404(B), characterizing the testimony as "improper character evidence." *See id.* at 115:4-115:14. Inasmuch as counsel attempted to preserve this issue for appeal, and given that Thomson refers tangentially to it in his brief, we briefly consider whether the court's admission of the testimony was plain error. To make a showing of plain error, an appellant "must establish that an error occurred, that the error was obvious, and that the error affected his * * * substantial rights." (Citation omitted.) *State v. Reddix*, 8th Dist. Cuyahoga No. 107672, 2019-Ohio-2441, ¶ 7; *see also* Crim.R. 52(B). Notice "of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

{¶ 20} The trial court improvidently allowed Officer Melvin to testify about gangs generally, and Thomson's membership in a gang specifically, at greater length than the marginal relevance of the testimony necessitated. Arguably, therefore, the court should have sharply curtailed the testimony, or perhaps, excluded it altogether. Nevertheless, the balance of Officer Melvin's testimony, in which he described seeing Thomson's hand on a gun in a motor vehicle and later discovering that the gun was loaded, sufficed to prove Thomson guilty of improperly handling a firearm in a motor vehicle.

{¶ 21} Regarding the charge of receiving stolen property, the gun's owner testified

that the gun had been stolen from his home in Columbus in April 2018, three months before Officer Melvin saw Thomson's hand on it in Springfield on July 26, 2018. Transcript of Proceedings 97:17-100:23, 126:16-129:8 and 130:10-130:21. Thomson had no receipt or permit for the gun, and when being questioned at the scene of his arrest, he denied that it was his. *Id.* at 133:10-134:4. Yet, while Thomson was being interviewed at Springfield Police Division headquarters, Officer Sanders pointed at the gun, which had been taken into evidence, and asked Thomson why he carried a gun at all; in response, Thomson said that he carried the gun for protection. *Id.* at 160:1-162:24. The jury could reasonably have construed Thomson's answer to be an admission that the gun was in his possession, and the jury further could reasonably have interpreted Thomson's apparent reluctance to acknowledge his possession of the gun to be a product of his awareness that the gun was stolen. Because the jury could not look into Thomson's mind, it had to infer Thomson's knowledge in light of the circumstances. *See State v. Tolliver*, 49 Ohio App.2d 258, 262, 360 N.E.2d 750 (1st Dist.1976); *State v. Cole*, 2d Dist. Greene No. 96 CA 71, 1997 WL 271676, *3 (May 23, 1997), citing *Tolliver* at 262.

{¶ 22} Officer Melvin's testimony about Thomson's gang affiliation posed a risk of causing unfair prejudice, but the remainder of the evidence supported the jury's verdict of guilty on the charge of receiving stolen property. The trial court, for that matter, delivered a limiting instruction, and despite the flawed nature of the instruction, the court did caution the jury that the "law and fundamental fairness prohibit you from drawing an inference that [Thomson]'s bad acts and/or [sic] crimes other than those charged in the indictment, renders character such that is that [sic] is more likely that he committed the offenses for

which he is on trial."[9]   Transcript of Proceedings 206:23-207:23.   Although the trial court arguably erred by allowing the gang-related testimony, we cannot conclude either that the court thereby obviously erred, or that the testimony so adversely affected Thomson's right to a fair trial that the result is a manifest miscarriage of justice.

{¶ 23} On the record before us, we conclude that Thomson's trial counsel was not ineffective for presenting a defense without calling witnesses or introducing evidence; for not requesting a *Daubert* hearing with respect to Officer Byron's testimony; or for not requesting a mistrial.   Thomson's first assignment of error is overruled.

{¶ 24} For his second assignment of error, Thomson contends that:

THE TRIAL COURT ERRED UNDER OHIO CRIM. PRO. R. [sic]

16(K) IN ALLOWING EXPERT TESTIMONY WITHOUT PROPER NOTICE

TO THE DEFENSE[.]

{¶ 25} Thomson argues that the trial court erred by allowing the State to present expert testimony despite the State's failure to provide him with copies of the experts' written reports.   Under Crim.R. 16(K), a party intending to call an expert witness must submit "a written report summarizing the * * * witness's testimony, findings, analysis, conclusions, or opinion," as well as the witness's qualifications, "no later than twenty-one

---

[9] The court also instructed the jury that it "may consider [Thomson]'s alleged gang affiliation * * * only to the limited extent that you find that it tends to prove [Thomson] possessed the firearm at issue and/or [sic] knew that it was in the vehicle he was operating."   Transcript of Proceedings 207:10-207:15.   Taken literally, this instruction could have been understood to preclude the consideration of the gang-related evidence for any purpose in relation to the charge of receiving stolen property because neither "possess[ion]" of the firearm nor knowledge that it was "in the vehicle" were among the elements of receiving stolen property.   *Compare id. with Ohio Jury Instructions*, CR Section 513.51 (Rev. Jan. 11, 2014).

days prior to trial."

{¶ 26} A trial court's decision to admit or to exclude evidence, expert or otherwise, is reviewed for abuse of discretion. *State v. Williamson*, 2d Dist. Montgomery No. 19832, 2003-Ohio-6541, ¶ 26; *State v. Hopkins*, 2018-Ohio-1864, 112 N.E.3d 98, ¶ 28 (2d Dist.). Accordingly, the trial court should be reversed only if its decision was unreasonable, unconscionable or arbitrary. *See id.* The standard "is deferential and does not permit an appellate court to simply substitute its judgment for that of the trial court." *State v. Darmond*, 135 Ohio St.3d 343, 2013-Ohio-966, 986 N.E.2d 971, ¶ 34.

{¶ 27} Thomson challenges the admission of "the testimony of the government representative firing the gun [sic] and identifying the gun as the gun in question [sic]," as well as the testimony of the "Drug Task Force [sic] officers, [who] were clearly testifying as experts in gang-related activities." Appellant's Brief 17. Although Thomson's references do not accurately reflect the content of the record, the context of his argument indicates that he refers to two "government representative[s]," Officers Melvin and Byron of the Springfield Police Division. Officer Melvin, a member of the Safe Streets Task Force, testified about Thomson's gang affiliation and confirmed that State's Exhibit 1A was the same gun that he had recovered from the vehicle Thomson was driving. Officer Byron testified that he tested the gun by firing it twice, with a bullet being propelled from the barrel each time. The State did not provide Thomson with a report from either of these witnesses, and in Thomson's view, because the State thus failed to comply with the notice requirement set forth in Crim.R. 16(K), the trial court abused its discretion by admitting the officers' testimony into evidence.

{¶ 28} With respect to Officer Melvin, Thomson's argument lacks merit because

Officer Melvin did not offer any expert testimony. Lay witnesses, under some circumstances, are permitted "to express their opinions in areas in which it would ordinarily be expected that an expert must be qualified under Evid.R. 702." *See State v. McKee*, 91 Ohio St.3d 292, 296, 744 N.E.2d 737 (2001). When lay testimony of this kind is allowed, its admission is "not based on specialized knowledge within the scope of Evid.R. 702, but rather [the admission is] based upon [the] layperson's personal knowledge and experience." *Id.* at 297. Here, Officer Melvin's training and extensive first-hand observation of gangs, as established in the record, invested him with the requisite "personal knowledge and experience" to testify as a lay witness about gang activity in Springfield generally, and about Thomson's gang affiliation specifically. *See, e.g.*, *State v. Lewis*, 2d Dist. Greene No. 96 CA 12, 1997 WL 156596, *6-7 (Apr. 4, 1997); *State v. Slade*, 7th Dist. Mahoning No. 16 MA 0177, 2018-Ohio-2767, ¶ 26; *see also* Transcript of Proceedings 110:18-125:6.

{¶ 29} Furthermore, Officer Melvin need not have been qualified as an expert to have been deemed competent to testify that, upon close visual inspection, the gun he recovered from the vehicle Thomson was driving was the same gun entered into evidence as State's Exhibit 1A. A lay person could have offered the same testimony, particularly if the lay person were a police officer who routinely encounters firearms in the course of his duties. Similarly, Officer Byron need not have qualified as an expert to have been deemed competent to testify that he took the gun to the underground shooting range at the Clark County Sheriff's Department; that he squeezed the trigger twice; and that each time he squeezed the trigger, a bullet was propelled from the gun.

{¶ 30} Neither Officer Melvin nor Officer Byron offered expert testimony, meaning

that the State had no pretrial obligation to submit reports pursuant to Crim.R. 16(K). The trial court, then, did not abuse its discretion by admitting the officers' testimony. Thomson's second assignment of error is overruled.

{¶ 31} For his third assignment of error, Thomson contends that:

THE TRIAL COURT ERRED IN ISSUING CONSECUTIVE SENTENCES FOR A [sic] CLEARLY RELATED EVENTS [sic] [.]

{¶ 32} Finally, Thomson argues that the "[t]rial [c]ourt did not address R.C. 2929.14(E) [sic] and did not make all of the statutorily mandated findings before ordering" that he serve his terms in prison consecutively. R.C. 2929.14(E), of course, is irrelevant.

{¶ 33} Under R.C. 2929.14(C)(4), if an offender is found guilty of more than one offense and is sentenced to more than one term in prison as a result, the trial court "may require the offender to serve the * * * terms consecutively if [it] finds" that: (1) "consecutive service is necessary to protect the public from future crime" or "to punish the offender" sufficiently; (2) "consecutive [service] [is] not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public"; and (3) one of the conditions specified in R.C. 2929.14(C)(4)(a)-(c) is applicable. The relevant condition in this case is specified in R.C. 2929.14(C)(4)(b), pursuant to which consecutive service is warranted if the offender is being sentenced for two or more offenses and

[a]t least two of the * * * offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the * * * offenses * * * was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

The trial court made these findings in its judgment entry of conviction.

{¶ 34} On review of a felony sentence, an appellate court may vacate or modify the sentence "only if it determines by clear and convincing evidence that the record [of the case] does not support the trial court's findings under the relevant statutes," or that the sentence "is otherwise contrary to law." *See State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.2d 1231, ¶ 1; *see also* R.C. 2953.08(G)(2). A sentence "is not contrary to law [if it falls] within the statutory range [and the trial court] expressly state[s] that it * * * considered the purposes and principles of sentencing [under] R.C. 2929.11 [and] 2929.12." (Citation omitted.) *State v. Rodeffer*, 2013-Ohio-5759, 5 N.E.3d 1069, ¶ 32 (2d Dist.).

{¶ 35} Thomson argues only that the trial court erred by ordering that he serve his sentences consecutively without making the statutorily required findings. The court, however, did make the required findings, and notwithstanding Thomson's insistence that the State "failed to prove that the two * * * offenses [of which he was convicted] were related in any meaningful way," he has not shown by clear and convincing evidence that the trial court's findings were unsupported by the record. Transcript of Disposition Hearing 11:1-11:25, Nov. 20, 2018; Judgment Entry of Conviction 2, Nov. 20, 2018; Appellant's Brief 21-22. Thomson's third assignment of error is overruled.

### III. Conclusion

{¶ 36} Thomson has not shown that his counsel failed to render effective representation, or that he was prejudiced by counsel's performance. Although the State did not provide Thomson with reports from Officer Byron and Officer Melvin pursuant to Crim.R. 16(K), the trial court did not err by allowing the officers to testify because neither

of them offered expert testimony. Furthermore, the trial court did not abuse its discretion by ordering that Thomson serve his sentences consecutively because the court made the findings required by R.C. 2929.14(C)(4), and the sentences were not otherwise contrary to law. Therefore, the trial court's judgment is affirmed.

. . . . . . . . . . . .

HALL, J., concurs.

FROELICH, J., concurs in part and dissents in part:

{¶ 37} I join in affirming Thomson's conviction for improper handling of a firearm in a motor vehicle, but I would reverse his conviction for receiving stolen property and the related firearm specification, and would remand that matter.

{¶ 38} The majority acknowledges that the trial court "improvidently allowed Officer Melvin to testify about gangs generally, and Thompson's membership in a gang specifically, at greater length than the marginal relevance of the testimony necessitated." (*See* ¶ 20, above). As the record illustrates, the trial court also allowed the prosecution to exceed the narrow scope for which the court had authorized the use of that marginally-relevant testimony. In its pretrial decision overruling Thomson's objections to the admission of gang-related testimony, the trial court ruled that such evidence would be admissible only as to the "knowingly" element of the improper handling offense and the "possession" element of the receiving stolen property offense. (*See* Entry (Oct. 26, 2018), pp. 2-3). Despite such constraints, the State in closing argued that "[t]he gang evidence" explained how Thomson came to possess a gun stolen in Columbus – i.e., Thomson's gang affiliation "gives him opportunity to be involved in transactions like this[,] * * * to be

in possession of items like that." (Trial Tr., p. 186).

{¶ 39} In admitting the gang-related testimony, the trial court failed to consider whether the "marginal" probative value of that evidence would be outweighed by the danger of unfair prejudice from the jury's considering Thomson's gang affiliation as proof he knew the gun to be stolen. *See* Evid.R. 403(A); *see also State v. Hopkins*, 2018-Ohio-1864, 112 N.E.3d 98, ¶ 28 (2d Dist.), citing *State v. Gus*, 8th Dist. Cuyahoga No. 85591, 2015-Ohio-6716, ¶ 18, and *Huddleston v. United States*, 485 U.S. 681, 691, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988).

{¶ 40} Thomson cannot demonstrate material prejudice with respect to his conviction of improper handling of a firearm in a motor vehicle. The State proved Thomson's knowledge of the loaded gun's presence in his car both through Officer Melvin's testimony that Thomson reached for the gun after his car was pulled over and through Officer Sanders's testimony that Thomson said he carried a gun "for protection." The court's erroneous admission of the gang-related testimony was harmless beyond a reasonable doubt with regard to Thomson's improper handling conviction.

{¶ 41} A different conclusion follows as to Thomson's receiving stolen property conviction, however. Although the majority hypothesizes that the jury could have inferred that "Thomson's apparent reluctance to acknowledge his possession of the gun" (which he later said he carried for protection) was "a product of his awareness that the gun was stolen" (*see* ¶ 21, above), the State never advanced that theory to the jury. Instead, the State argued that Thomson knew the gun to be stolen because he was a gang member with "opportunity * * * to be in possession of" items such as stolen weapons. (Trial Tr., p. 186).

**{¶ 42}** The only other arguable basis in the record for the jury to have found that Thomson knew the gun to be stolen would be "a permissive inference" drawn from Thomson's "unexplained possession * * * of recently stolen property." (*See* Trial Tr., p. 201). However, the evidence showed that the gun had been stolen two counties away in Columbus some three months before it was discovered, under the passenger seat of the car Thomson was driving in Springfield, after the front-seat passenger ran from the vehicle; the recentness and proximity supporting an inference of knowledge were tenuous at best. The admission of the gang-related testimony materially prejudiced Thomson's ability to receive a fair trial on the receiving stolen property charge. The State failed to meet its burden of demonstrating beyond a reasonable doubt that substantial evidence supported the guilty verdict even if the "tainted evidence" of Thomson's gang affiliation were "cast aside." *See State v. Miller*, 2d Dist. Montgomery No. 26371, 2015-Ohio-2714, ¶ 13.

Copies sent to:

John M. Lintz
Mark J. Bamberger
Hon. Douglas M. Rastatter